Present—JOSEPH H. LUMPKIN, Chief Justice.
RICHARD F. LYON, ⎱
CHARLES J. JENKINS, ⎰ Judges.

———◦◦◦◦———

P. & R. A. FLEMING, plaintiffs in error, vs. WM. B. DORN, defendant in error.

D. sued P. & R. A. F., factors and commission merchants, for loss of cotton, occasioned by them in violation of instructions. P. had withdrawn from the firm before the loss occurred—his name, however, still continuing in the business. Upon R. A.'s giving a bond of indemnity, and executing to him a release, and tendering the clerk's certificate of a deposit of money by R. A., which the plaintiff admitted was sufficient to satisfy any recovery which D. might make : *Held*, that P. was a competent witness to testify for the defendants.

Case. In Richmond Superior Court. Tried before Judge Hook. April Term 1864.

The facts will be found fully stated in the opinion of the Court, as delivered by Chief Justice Lumpkin.

STARNES, for plaintiffs in error.

GOULD and FRANK H. MILLER, for defendant.

LUMPKIN, C. J.

It appears that William P. Dorn filed his petition against Porter Fleming and Robert A. Fleming, as merchants and copartners, by the name and style of P. and R. A. Fleming, in which the plaintiff alleged that some time in the year 1862, he stored a lot of cotton with the defendants as factors and commission merchants, and in their warehouse in the city of Augusta. On the appeal trial, he introduced the depositions of one James M. C. Freeland, who stated that he was present at an interview between his employer (the plaintiff) and the said Porter; who proved that instructions were given by plaintiff to defendant Porter Fleming, on the day the cotton was weighed, to have it insured for three months, at eighty dollars per bale, and, in the mean time, to sell the cotton if he could not have the insurance renewed. Testimony was also offered by the plaintiff, for the purpose of showing that the cotton was first stored by the defendants n their warehouse on Campbell street, in said city, and that it was subsequently burnt and destroyed, to-wit: on the 4th of November, in the year. aforesaid, in a shed or warehouse on Reynolds street, in said city, (which shed was used for storing cotton by the defendants,) to which it had been removed by defendants, and that no insurance had been effected by them on the same. Proof was also introduced by the plaintiff, as to the quality and value of the cotton, for the purpose of enabling the jury to estimate the damage which. had been done to him, as he insisted, by the failure of the defendants to insure the cotton, or by their removal of the same from the warehouse on Campbell street, to the shed or warehouse on Reynolds street, in said city, and its destruction by fire. The witness, Freeland, testified that there were seventy-five bales of cotton, weighing about four hundred and four pounds per bag.

To meet this case, the defendants introduced some evidence as to the value of said cotton; also, the testimony of Charles F. McCay, an insurance agent and expert, as to the com-

parative safety of the cotton in the house to which it had been removed; and then Porter Fleming, one of the defendants, was called to the stand for the purpose of correcting, as was alleged, the statement made by the witness, Freeland, as to the conversation between himself and the plaintiff; and, at the same time, was tendered to the counsel for the plaintiff, to be presented to the Court, a bond executed by the said Robert A, in favor of the said Porter, which recited that in consideration of the fact that the said Porter was not a member of the said firm of P. and R. A. Fleming, in truth and in fact, at the time of the loss of said cotton, though his name had been retained, and the business had continued in that name—the said firm having really, as between the partners themselves, been previously dissolved—as well as for and in consideration of the sum of one thousand dollars then paid, the said Robert A. Fleming bound himself, his heirs, executors, and administrators, unto the said Porter, in the just and full sum of whatsoever judgment might be recovered in the aforesaid suit at the instance of the said Dorn, against the said firm of P. and R. A. Fleming, or against the said Porter, together with all interest or damages, and all costs of suit, to be immediately paid upon the rendition of final judgment therein; and, at the same moment, was tendered to the counsel, to be presented to the Court, a release executed by the said Robert A, in favor of the said Porter, which, in consideration of similar premises to those stated in said bond, acquitted and discharged the said Porter from all liability to him, the said Robert A, for and on account of the transaction for which the suit was brought, or of any judgment that might be rendered therein; and with said bond and release was, at the same time, tendered a certificate of deposit, signed by the Clerk of said Court wherein the suit was pending, acknowledging to have received from the said Robert A, fifteen thousand dollars in interest-bearing Confederate Treasury notes, which had been deposited with the said Clerk for the payment of any sum which might be recovered by the said plaintiff, in the said case.

It was, also, at the same time, proposed by the counsel offering the said Porter Fleming as a witness, that he should be sworn upon his *voire dire*, if it was desired, before he was sworn in chief. To the testimony of the said Porter, and his admissibility as a witness, objection was made, on the ground of interest, because he was a party to the record—a partner, by the record, of the said Robert A; and because there had been no plea filed by the defendants setting forth the fact, if it were true, that the said Porter had disposed of his interest in said co-partnership and was only a nominal party to the record—the counsel for the plaintiff admitting, for the purposes of that argument and issue, that the deposit was sufficient to satisfy any recovery that might be had by the plaintiff, and waiving all objection that the deposit was not in gold and silver coin. The counsel for the defendant offered, if the Court thought that a plea setting forth the fact that the said Porter was only a nominal party to the record, was needed, and that its absence constituted any difficulty in the way of admitting his testimony, to amend and introduce such plea, as it was their clear right to do at any stage of the cause. But the Court, for other reasons, rejected the testimony of the said Porter Fleming, and refused to permit him to be examined and sworn in said case; to which ruling and decision of the Court, the defendants' counsel excepted.

Was Porter Fleming a competent witness in this case?

It is admitted that originally he was not, for he had been a partner of his co-defendant, and had never so withdrawn from the firm of P. & R. A. Fleming as to relieve him from responsibility to third persons.

Was the witness, then, relieved from his interest by the acts done by Robert A. Fleming?

In the first place a bond was executed by Robert A. to Porter Fleming, reciting that the said Porter in truth and in fact was not a member of the firm of P. & R. A. Fleming at the time of the loss of said cotton—the said firm having been previously dissolved; and on that account, and for other considerations, obligating himself, his heirs, etc., to

indemnify the said Porter against any judgment that might be recovered in favor of Dorn, the plaintiff, against the said Porter, or the firm of P. & R. A. Fleming; and also, binding himself to pay immediately the judgment of the plaintiff in the suit, principal, interest and cost, should any be rendered in his favor.

In the second place, a release from Robert A. to Porter Fleming was tendered, acquitting and discharging the said Porter from all liability to the said Robert A. on account of the transactions for which the suit of the said Dorn was instituted.

And, thirdly, the certificate of the Clerk of the Court was offered, in which he acknowledged to have received from Robert A. Fleming a certain amount of money on deposit, for the payment of any recovery which the plaintiff might obtain in the case, as well as the costs of suit—which sum, the plaintiff, for the sake of the argument, admitted to be sufficient for that purpose, waiving all objection that the deposit was not in gold and silver coin.

We again ask, were not these acts sufficient to relieve the witness from the bias which interest is supposed to impart to his evidence, and to restore him to competency?

Waiving the authority of all past adjudications upon this subject, section 3785 of the Code of Georgia enacts that a deposit of money to cover all costs, or *any other act* which, in the judgment of the Court, relieves the witness from interest or other ground of incompetency, will restore his competency.

Seeing, then, the strong tendency of the Legislature, as it has been of the Courts, to widen the door for the admissibility of testimony, and to make objections go rather to the credibility than the competency of the witness, shall we, when called on for the first time to expound this section, begin by frittering away one of the broadest provisions of the Code—a book which contains, in my humble opinion, more law and better law, than will be found in any volume of its size extant?

The liability of Porter Fleming, though a legal liability, was not in reality his; the documents appended to the bill of exceptions show that whatever it might be, the most ample indemnity was provided against it. The plaintiff was abundantly secured in his recovery by Robert A. Fleming depositing with the Clerk ample funds for this purpose. What legal obligation was there left uncovered to disqualify Porter Fleming as a witness? As the party who Freeland testified the plaintiff transacted the business with, Porter Fleming might feel an honorary obligation to rebut, by his own, Freeland's evidence; but this will not suffice to exclude him. Code, section 3779.

But it is argued that the deposit of the money with the Clerk was not by rule of Court; that no order was made to impound the money; that it could be withdrawn by the depositor at any moment—even after verdict—and that if not withdrawn, the plaintiff could not reclaim it after recovery, without the consent ofthe defendant, or an order of Court, and, until such consent or order, the verdict or judgment would have bound the witness offered, and that his interest, therefore, remained.

Does counsel for plaintiff suppose, that, after the deposit of the money with the Clerk, and by that act the Court was influenced to admit the testimony of the witness, that the party offering him could afterwards, and in the very face of the Court, withdraw it? Surely not. The party or his counsel proposing it, would be guilty of a contempt. Code, section 200, paragraph 4.

When money is deposited by a party with the Clerk, *the law* impounds it, and will hold it subject to the purposes for which it was deposited. Whether it would have to be drawn by order of Court, may or may not be so; but what of that? Money received by the Clerk, or collected by the Sheriff, has frequently to be drawn by rule, even when there are no contestants for the fund. This proves nothing.

Let the judgment be reversed, and a new trial ordered.

JENKINS, J. concurred.

LYON, J. dissenting.

My objection to the admissibility of this witness, is, not that he is a party to the record—that I regard as a settled question—but, that he is interested in the result of the suit; that his interest is legal, certain, and immediate.; and that this interest has not been removed by the releases executed between the witness and his brother; by the deposit of the Confederate treasury notes in Court by the co-defendant; or by any, or all the acts done with this intent; and that this interest can not be removed, except by the consent of the plaintiff or his satisfaction; and that, until this is done, or the law is changed, he is incompetent to testify in this case. To illustrate: although this partnership had been dissolved, and the proposed witness had no interest in the partnership, yet, as the dissolution had not been published to the world, and as the witness had allowed his brother to use his name as a partner in the warehouse, to get custom, &c., his liability was as complete to those who dealt with the partnership, as that of his brother Robert. This is not denied. Now, notwithstanding the releases and agreements between Porter and Robert Fleming, and the deposit of the money in Court by Robert Fleming to meet such recovery as the plaintiff might have, still, the plaintiff was not bound by these releases, bonds, and agreements; nor was he bound to look alone to the fund deposited in Court to meet his judgment. The judgment, when recovered, would bind all the property of both defendants—the money on deposit in the Court, the property of Robert Fleming, and all the other property, both real and personal, of both defendants—and he could have his execution turned upon the property of either, at his option, to satisfaction. Such is the right of a judgment creditor, under the laws of this State. Is not the interest of the witness, then, palpable and manifest? It is said, that if there should be a recovery, notwithstanding the testimony of this witness, there is nothing to be done but to take an order of

Court to pay over the money to the judgment, and, thus the liability would be ended. That may be true—that is, if the money should be there at the end of the litigation. But who is to answer for that? Who is to take that risk? Suppose the money should perish, as the money deposited in this case did perish. Suppose the Clerk, or custodian of the money appointed by the Court, should appropriate the money? Or suppose, without any fault of his the money should be stolen or destroyed, (and these are not far fetched contingencies; they are such as happen constantly—are liable to happen at any time with the best and most reliable of custodians or bailees,) is the plaintiff to take the risk? And why? That is not his contract. He bargained for the liability of Porter Fleming; that is the security he took for his protection; he had the right to do so; and what Court or other tribunal in this land, has the right to change the security he acquired by his own contract? That is what is proposed to be done in this case; to extinguish and discharge a security that this plaintiff acquired under his contract, and to substitute a new and wholly different one in lieu, without his consent, and against his objection. Surely this cannot be done, under the Constitution and laws of this land.

Counsel for the plaintiff insist, that they had the right to deposit the money in Court, at the risk of the defendant, as they could have done in a tender of payment and refusal. Not so. The cases do not bear the slightest analogy to each other. In a tender, the money is placed in Court as the property of the creditor—not of the debtor; and he can take it whenever he chooses to accept it as satisfaction, or, as some one jocularly remarked in the hearing of the Court, whenever he gets over his mad fit. Not so in this case; the creditor was willing and anxious to take the money and be satisfied. He was not prosecuting his suit for blood—but money; and that was precisely what the defendants in the suit were fighting against. It was not put in Court for his benefit, but to create a means to defeat his recovery of any part thereof.

It is true that the deposit of the money in Court is, or may be, an ample protection to the witness against loss— against an ultimate liability to pay or to lose the money ; but it does not extinguish his liability ; that continues.   His liability is still as complete,  certain, and  immediate as is that of a security for a fire-proof principal who has always to his credit, in a fire-proof bank, double or treble the amount. I mean by fire-proof, one that is so solvent and  good that there is no possible danger of failing ; and yet such a person— such a security, could not be  admissible to testify at the instance of such a principal, in a  proceeding  to  recover the debt.   And why ?   Because he is liable for the debt as much as the principal ; and so is this witness.   Nay, more—he is one of the principal debtors.   It is true, also, that when the money is deposited in safe hands (it being deposited with the Clerk of the Court does not sanctify the transaction ; for there is no law for such a thing, under the circumstances— it might as well be deposited in bank, except, that here, the Clerk could be ruled as an officer of Court, and so could any other person who took, under the sanction of the Court and parties, as a receiver), the risk of the witness to pay the debt, is small ; but that does not weaken the objection, for no matter how small the interest may be, still, if it is legal, certain, and immediate, the witness is incompetent.

I have not cited any authority ; for the rules that I rely upon are so familiar with the profession, that reference to authorities to support them, would be simply silly.

Counsel for the plaintiff read and relied on section 3785 of the Code, as follows: " A deposit of money to cover *all cost,* or any other act which, in the judgment of the Court, *relieves the witness from his interest* or other ground of incompetency, will restore his competency."

This does not change the rule ; it is only a statement of the law, as it had long been settled, that a party to the record, not interested, or whose interest had been removed by the deposit of money for costs, as had long been sanctioned by the Court was competent.   It did not mean a deposit of money to meet and

satisfy the judgment in case of a recovery—far from it. The act done to restore the competency of the witness, or to render him so, must relieve him from all interest. Whenever, and however, that may be done, the witness or party to the record will be competent. That is my understanding of the Code, and I make no issue but assent to it as sound law; but what I say is, that the interest of the party here, remained, notwithstanding the deposit and other acts.

A number of cases were read from the Reports of this Court, where parties to the record were allowed to testify. It is unnecessary to refer to them, as I make no issue with them. They went upon the ground that the parties to the record allowed to testify in those cases had no interest; and when that is the case, I admit the competency.

For these reasons, I dissent from the judgment of the Court.