[No. 9,089. In Bank.—April 16, 1885.]

GEORGE HART, RESPONDENT, *v.* WESTERN UNION TELEGRAPH CO., APPELLANT.

66   579.
107  323
——————
66   579
f130 661

TELEGRAPH COMPANIES NOT COMMON CARRIERS—DEGREE OF CARE REQUIRED.— Under the provisions of the Civil Code, telegraph companies are not common carriers, but must use "great care and diligence in the transmission and delivery of messages."

ID.—STIPULATIONS LIMITING THEIR LIABILITY.—A stipulation providing that the liability of the company for any mistake or delay in the transmission or delivery of a message, or for not delivering the same, shall not extend beyond the sum received for sending it, unless the sender orders the message to be repeated, by sending it back to the office which first received it, and pays half the regular rate additional, is a reasonable precaution to be taken by the company, and binding upon all who assent to it, so as to exempt the company from liability beyond the amount stipulated, for any cause except willful misconduct or gross negligence on the part of the company.

ID.—BURDEN OF PROOF.—In an action to recover damages beyond the amount stipulated, the burden of proof is on the plaintiff to show such willful misconduct or gross neglect.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*W. H. L. Barnes*, for Appellant.

*Byers & Elliott*, for Respondent.

Ross, J.—Further consideration has convinced us that some of the views expressed when this case was considered in department should be modified, and the rulings in some respects changed. The case is this:

On the 15th day of December, 1882, the plaintiff delivered to the defendant, at its Stockton office, this message:

" George W. McNear, *San Francisco:*

" Buy bail barley falun; report by mail.

George Hart."

The message was promptly transmitted and delivered as written, except that the word " bail " was changed to the word " bain." By the private cipher code of McNear, used by the plaintiff in the message, the word " bail " means " 100 tons," and the word " bain " means " 225 tons." As the message was delivered, it directed McNear to buy for the account of the plaintiff 225 tons of barley; whereas as it was written by the plaintiff, McNear was directed to buy on plaintiff's account 100 tons only. Acting on the message received, McNear bought for plaintiff 200 tons of barley. When the plaintiff discovered the fact, he notified the defendant that 100 tons had been bought in excess of that directed to be bought by the original message, and asked the defendant what he should do with the surplus so purchased? Defendant refused to give any instruction in regard to it. Plaintiff thereupon sold the barley at the highest market rate, his loss on the extra 100 tons being $429.-82. It is for the loss thus sustained by him, that the action is brought.

At the trial, the only proof given by the plaintiff to show negligence on the part of the defendant was the admitted fact that the message was delivered in its altered form. It was also admitted that the message was written by the plaintiff upon a printed form prepared by the defendant, underneath the words, " send the following message, subject to the above terms, which are hereby agreed to," and that among the " above terms " referred to are the following : " To guard against mistakes or delays, the sender of a message should order it repeat-

ed ; that is, telegraphed back to the originating office for comparison.    For this, one-half the regular rate is charged in addition. It is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any unrepeated message, whether happening by negligence . of its servants or otherwise, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for non-delivery of any repeated message, beyond fifty times the sum received for sending the same, unless specially insured ; nor in any case for delays arising from unavoidable interruptions in the working of its lines, or for errors in cipher, or obscure messages."

That the message in question was not directed to be "repeated," is conceded by the plaintiff ; and, on the part of the appellant, it is contended that, as the message was not repeated, appellant is not responsible in damages beyond the amount received for its transmission ; and this, because it is so declared in the conditions printed at the head of the form upon which the dispatch was written, and to which, as is claimed, the plaintiff assented.   In department, we held that telegraph companies are exempt only for errors arising from causes beyond their own control.    In the first place, this rule would extend the liability of such companies beyond that declared by statute in this state. Originally, section 2162 of the Civil Code read : " A carrier of messages for reward must use great care and diligence in the transmission and delivery of messages.    A carrier by telegraph must use the utmost diligence therein " ; and section 2168 of the same code originally read : " Every one who offers to the public to carry persons, property or messages, is a common carrier of whatever he thus offers to carry."    But in 1874 these sections were amended and made to read as follows :

" SEC. 2162.    A carrier of messages for reward must use great care and diligence in the transmission and delivery of messages."

" SEC. 2168.    Every one who offers to the public to carry persons, property or messages, excepting only telegraphic messages, is a common carrier of whatever he thus offers to carry."

By statute, therefore, a telegraph company in this state is not

a common carrier, and the degree of care and diligence exacted of such companies in the transmission and delivery of messages is "great care and diligence." If great care and diligence—which terms, of course, include the employment of proper instruments and competent operators—be exercised by the company, in the transmission and delivery of a message, the degree of care prescribed by the statute is complied with. In the next place, the effect of holding that telegraph companies are exempt only for errors arising from causes beyond their own control, would be to hold that such companies cannot by stipulation limit their liability to any extent; for since they are not common carriers or insurers, in no event would they be liable for errors arising from causes beyond their own control. With respect to such stipulations, the decisions of the courts are very conflicting.

In Illinois, Maine, and Wisconsin, it is held that there can be no consideration for such a stipulation on the part of the sender of the message, and that so far as he is concerned, it is void for that reason, although fully assented to by him. (*Tyler* v. *Western U. T. Co.*, 60 Ill. 421; S. C., 74 Ill. 174; *Candee* v. *W. U. T. Co.*, 34 Wis. 477; *Bartlett* v. *W. U. T. Co.*, 62 Me. 218.) It is further held in these cases, that such a stipulation is contrary to public policy, and for that reason, also, is void. On the contrary, the cases are very numerous that hold that a stipulation providing that the liability of the company for any mistake or delay in the transmission or delivery of a message, or for not delivering the same, shall not extend beyond the sum received for sending it, unless the sender orders the message to be repeated by sending it back to the office which first received it, and pays half the regular rate additional, is a reasonable precaution to be taken by the company, and binding upon all who assent to it, so as to exempt the company from liability beyond the amount stipulated, for any cause except willful misconduct or gross negligence on the part of the company. (*Grinnell* v. *Western U. T. Co.*, 113 Mass. 299; *Western U. T. Co.* v. *Carew*, 15 Mich. 525; *Camp* v. *Western U. T. Co.*, 1 Met., Ky. 164; *Breese* v. *U. S. Tel. Co.*, 48 N. Y. 132; *Passmore* v. *Western U. T. Co.*, 78 Pa. St. 138; *Lassiter* v. *Western U. T. Co.*, 89 N. C. 334, and numerous cases collected in the note to the

case of the *Western U. Tel. Co.* v. *Blanchard*, reported in 45 Am. Rep. 486.)

There is still another class of cases, of which *Sweetland* v. *Illinois & Miss. Tel. Co.*, 27 Iowa, 433, is one, which maintain that such a stipulation should not be held to exonerate or release the company from damages caused by defective instruments, or a want of skill or ordinary care on the part of its operators. But as this latter class of cases concede that telegraph companies are not common carriers, their liability must rest on the ground of negligence or willful misconduct which is fraud. Fraudulent conduct on the part of the company would, of course, vitiate such a stipulation ; but to say that no stipulation can be made limiting their liability for negligence, is to say in effect that no stipulation can be made limiting their liability at all. It seems to us, therefore, that we must either hold, as did the courts in Illinois, Maine and Wisconsin, that such stipulations are invalid, because unsupported by a consideration, and contrary to public policy, or that it is competent for telegraph companies to stipulate for the limitation of their liability for errors arising from any cause except willful misconduct or gross negligence. As respects the question of consideration, it is enough to say that if the stipulation is one that can be made, it is a part of the contract, and is supported by the same consideration that supports the contract for the transmission and delivery of the message. With respect to the reasonableness of stipulations of the character of that under consideration, we find, upon careful examination, that, according to the weight of authority, a regulation that the liability of the company for any mistake or delay in the transmission or delivery of the message, or for not delivering the same, shall not extend beyond the sum received for sending it, unless the sender orders the message to be repeated, by sending it back to the office which first received it, and pays half the regular rate additional, is a reasonable precaution to be taken by the company, and binding upon all who assent to it, so as to exempt the company from liability beyond the amount stipulated, for any cause except willful misconduct or gross negligence on the part of the company; and we so hold. It would serve no useful purpose to state at length the reasons given by the various courts in support of this conclu-

sion. It is sufficient to say, generally, that they are founded in the peculiar nature of the employment; the extraordinary risks attending it, against many of which human foresight cannot provide; in the fact that the thing—the message—with which the company is intrusted, is of no intrinsic value; that the importance of it cannot be estimated except by the sender; for the transmission of which there must be a simple rate of compensation, and the measure of damages for a failure to transmit or deliver which has no relation to any value which can be put on the message itself.

The action of the court below, with respect to the instructions, was not in accord with these views. As the case must, therefore, be sent back for a new trial, it is proper that we should determine upon which party rests the burden of proof. But for the stipulation, the plaintiff having proved the mistake in the message as delivered, the *onus* would undoubtedly be upon the defendant to excuse its breach of the contract to transmit and deliver the message. But the contract having included a stipulation, to the effect that, unless repeated, the defendant should not be held liable for any mistake or delay in the transmission or delivery of the message, or for not delivering the same, beyond the sum received for sending it, unless the mistake, delay or failure arose from the willful misconduct or gross neglect of the defendant, the plaintiff's right to recover more than the amount paid for sending the message (for which defendant in the present case, by its answer, offered to allow judgment) could not be established, except by proving willful misconduct or gross negligence on the part of the defendant.

Judgment and order reversed, and cause remanded for a new trial.

MYRICK, J., SHARPSTEIN, J., MORRISON, C. J., and McKINSTRY, J., concurred.

THORNTON, J., dissented.

McKEE, J.—I dissent. This was an action to recover damages for failure to transmit and deliver a cipher message to the person to whom it was addressed.

On the 15th of December, 1882, plaintiff delivered to the

manager of the defendant, at its office in Stockton, for transmission to San Francisco, the following cipher message :

" December 15, 1882.

" To GEO. W. McNEAR, *San Francisco :*

   " Buy bail barley falun report by mail.

GEO. HART."

  " 8 collect."

Upon the receipt of the message at the Stockton office, the operator of the defendant promptly attempted to send it to San Francisco ; but it was received in the San Francisco office in the following form :

" 4                                                         172

   " M. 9:20 a F.   8 collect Sk.

" STOCKTON, Cal. Dec. 15.

" San Francisco, December 15.

" GEO. W. McNEAR :   Buy bain barley falun.   Report by mail.

" GEORGE HART."

  " R."

And in that form it was delivered to the person to whom it was addressed.

It will be observed that the substantial difference between the two messages is, that the word " bail," in the message delivered for transmission, is changed to the word " bain " in the message as received and delivered. Now, both words formed part of the secret cipher code of the sender and receiver of the message ; and, according to that code, the word " bail" meant 100 tons, and the word " bain " meant 225 tons. So that, upon receipt of the message, as delivered to him, the plaintiff's agent immediately purchased for the plaintiff 225 tons instead of 100 tons of barley ; and this resulted in a loss to the plaintiff of $430, for which he seeks to make the defendant liable.

In the case there is no conflict of evidence. It is admitted that the word " bail " was plainly written in the message which the plaintiff delivered to the manager of the defendant's office at Stockton. It was also proved, by evidence in which there is no conflict, that the message as delivered was carefully read by

the manager, and by him handed to the operator for transmission; that it was promptly transmitted over the wires to San Francisco; that the operator at the San Francisco office and at the Stockton office were both competent and experienced telegraph operators, and that the message was delivered in its altered form—the mistake consisting in the spelling of the word "bail." In telegraphic orthography the word "bail" is spelled thus: "B" is a dash and three dots, "a" is a dot and a dash, "i" is two dots, and "l" is a dash. "Bain" is spelled by the same lines and dots, except that the letter "n" is a dash and a dot. The actual mistake in the message was, therefore, the addition of a dot to the line in the last letter of the word; and the question is whether that mistake was the result of negligence on the part of the officers or agents of the defendant in the transmission of the message.

Under the code a telegraph company is not a common carrier (§ 2168 C. C.); it is, however, a carrier of messages for reward (§ 2161 id.), and, as such, it works under a law which binds it to the exercise of great care and diligence in the transmission and delivery of messages (§ 2162 id.). Like any other corporation or person, it is therefore bound, in the exercise of its legal rights, to perform its duty without causing injury or loss to any one; and if it omits to perform in good faith any obligation imposed on it by law, it is liable for the consequences. No contract which it may make by its rules or regulations, is allowed to exempt it from liability for misfeasance or nonfeasance in the performance of its duties. Such regulations for exemptions or immunity from liability for error or mistake, which results in loss to another, from the fraud or neglect of itself or its subordinate officers or agents, are considered in law as unreasonable, and being against public policy, are void. (*Sweetland* v. *Illinois Tel. Co.*, 27 Iowa, 443; *Western Union* v. *Buchanan*, 35 Ind. 429; *U. S. Tel. Co.* v. *Gildersleeve*, 29 Md. 233; 33 Id. 248; *Tel. Co.* v. *Fontaine*, 58 Ga. 433; *Ellis* v. *Am. Tel. Co.*, 14 Allen, 266.) If, therefore, a mistake occurs in the transmission of a message from the fraud or neglect of the company, or any of its officers or agents, which results in loss to the sender or receiver of the message, the company is liable for the loss. (§ 1714 C. C.)

In the case in hand, plaintiff proved the mistake—in fact, it

was admitted—and the loss which it occasioned him.   That proof constituted a *prima facie* case, upon which he was entitled to recover in the action.   It was not necessary for him to show affirmatively how the mistake occurred, or whether it happened from some defect in the instruments which the company used, or the incompetency or inexperience of the company's operators, or of any omission of duty by the company or its officers.   The mistake being admitted, the legal presumption was that it .was caused by one or other of those causes, or all of them combined ; and it was incumbent on the defendant to overcome that presumption by showing that, in the transmission and delivery of the message, it exercised proper care and diligence, and that the mistake was not attributable to its fault or negligence, or the fault or negligence of any of its employees.   (*Bartlett* v. *Western Union*, 62 Me. 209 ; *Rittenhouse* v. *Ind. Line*, 44 N. Y. 263 ; *Baldwin* v. *U. S. T. Co.*, 45 N. Y. 744; *So Relle* v. *W. U. T. Co.*, 55 Tex. 308.)

The defendant, however, did give evidence which tended to prove that during the transmission of the message, " fog and wind and a heavy storm prevailed " ; that owing to that state of the weather, the word " bail " in the message was changed to the word " bain," and that the change was caused by what is known among telegraph operators as " a false signal caused by the breaking of the current."   Upon that question the superintendent of the company gave the following testimony :

" A.   There are various causes that make the working of a telegraph wire uncertain, even in good weather ; faults in the instruments—unavoidable ones—may cause errors in the transmission of words or letters.   Generally, errors of this kind are caused by high winds, which bring two wires together, or switch the limb of a tree against the wire, causing a momentary variation of the strength of the current.   Dense fogs will also have the same effect.

" Q.   Take the word ' bail,' written with a dash and three dots, a dot and a dash, two dots and a dash, assuming that word to have been correctly sent from the Stockton office to San Francisco, could the final ' l ' be changed to ' n ' so as to reach San Francisco as ' bain,' not ' bail ' ? "

" A.   A great many atmospheric influences could cause an er-

ror of that kind. It is called a false signal, caused by the breaking of the current. In this case there was a momentary break in the current, and that break might have made three dots; in this case it made only one additional dot at the end. If it broke in the middle, it would make the letter 'm.'"

Still, however that may be, the mistake, whether it resulted from the negligence of the company, or from natural causes beyond its control, could have been discovered and corrected if the message had been repeated; that is, sent back to the Stockton office for comparison with the original message. The company could have tested its accuracy in that way before delivery, if it was properly equipped for the performance of its functions. That it was so equipped, is evident from the admitted fact that the operator at San Francisco repeated the message, for the purpose of discovering whether the word "falun" in the message had been correctly transmitted.

But the contention is that the plaintiff should have ordered the message repeated in order to secure its accuracy, because he had it transmitted under an agreement between him and the company, which reads as follows :

"All messages taken by this company are subject to the following terms : To guard against mistakes or delays, the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison. For this, one-half the regular rate is charged in addition. It is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any unrepeated message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any repeated message, beyond fifty times the sum received for sending the same, unless specially insured ; nor in any case for delays arising from unavoidable interruption in the working of its lines, or for errors in cipher or obscure messages."

The message was sent in cipher, the sender did not explain its meaning, nor order it to be repeated. Two questions, therefore, arose out of the case as it was submitted to the jury, name-

ly: (1) Was the mistake the result of the negligence of the defendant or its officers, or of natural causes beyond their control? (2) Was the agreement, under which the message was transmitted and delivered, a defense to the action, or a restriction upon the liability of the defendant.

Upon the first of these questions the court instructed the jury as follows:

" The question for you to determine is one of fact: whether or not plaintiff's loss was caused by the gross negligence of the defendant or its agents.

" If the jury believe from the evidence that a mistake was made in transmitting the message through the gross negligence of the defendant or its servants, the verdict must be for plaintiff.

" The defendant, however, as a defense to the action, insists that the message in question was what is known as an unrepeated message, and it contends that in the case of such messages it is only liable for the amount received by it for sending the message.

" If the jury believe that a mistake was made by the defendants or its agents in transmitting the message, through the gross negligence of the defendant, then defendant is responsible for the damage plaintiff suffered by reason of such mistake in transmitting said message, although the jury believe that plaintiff used one of the forms of defendant, having the terms printed at the top, as set out in defendant's answer, and that plaintiff assented and agreed to such terms, and did not require said message to be repeated, or its correct transmission insured."

And upon the second question, it refused to give the following instructions, which the defendant requested :

" If the jury believe from the evidence that plaintiff's original message was written upon one of the blanks of the defendant, and was an unrepeated message, the defendant is only liable to the plaintiff in this action for the amount received by it for transmitting the same, to wit, the sum of thirty cents (30c.).

" The defendant also alleges, as a defense, that the plaintiff's message was what is known as a cipher message—that is to say, that the true contents and meaning of the plaintiff's telegram were by him intentionally concealed from the defendant by the use of words arbitrarily selected, and having a different meaning

from that ordinarily attached to them.    If the jury believe, from the evidence, that the said message was, in fact, a cipher dispatch, and that no explanation was made to the defendant by the sender of said message of the meaning, object, or purpose of said message, then whatever damage the plaintiff may have sustained by reason of any mistake in said message must be borne by himself, and the defendant is only liable to the plaintiff for the amount received by it for transmitting the same, to wit, the sum of thirty cents (30 c.), and no more."

It is objected that the instructions which the court gave to the jury were erroneous, because they were grounded upon the assumption of a fact, viz: gross negligence, of which there was no proof and no evidence from which it could be inferred ; and because they ignored altogether a fact of which there *was* evidence, viz: that the mistake was caused by circumstances which were beyond the control of the company.

But, as has been already shown, the company was bound by law to the exercise of great " care and diligence " ; and if it failed to perform for the plaintiff the duty which it undertook, the plaintiff, upon proof of the failure and of the loss caused thereby, made out a *prima facie* case, which entitled him to recover.    That being so, it was in no way prejudicial to the defendant, to characterize the want of great care and diligence which occasioned the loss as gross negligence.    Indeed, the phrase was more favorable to the defendant than if the court had merely used the term negligence.

There has been no legislative attempt to establish degrees in negligence since the repeal of section 17, C. C.    Construed as an ordinary phrase, the term " gross negligence," as used by the court in its instructions to the jury, may, therefore, be considered as the equivalent of that want of great care and diligence exacted by the code of the company in the performance of its duties.    The absence of such care and diligence as the circumstances demanded would be, therefore, gross negligence. " Gross negligence," says Rolf, Baron, in *Wilson* v. *Brett,* 11 M. & W. 113, " is the same thing as negligence, with the addition of a vituperative epithet."    Any negligence is gross, in one who undertakes a duty and fails to perform it.    (*Lord* v. *Midland R. R. Co.,* 2 C. P. 339.)    The tendency of judicial opinion

is adverse to any distinction between the two expressions.
" Strictly speaking," says Mr. Justice Bradley, in *Railroad Company* v. *Lockwood*, 17 Wall. 382, " these expressions are indicative rather of the degree of care and diligence which is due from a party and which he fails to perform, than of the amount of inattention, carelessness, or stupidity which he exhibits. If very little care is due from him, and he fails to bestow that little, it is called gross negligence. If very great care is due, and he fails to come up to the mark required, it is called slight negligence. And if ordinary care is due, such as a prudent man would exercise in his own affairs, failure to bestow that amount of care is called ordinary negligence. In each case the negligence, whatever epithet we give it, is failure to bestow the care and skill which the situation demands; and hence it is more strictly accurate perhaps, to call it simply " negligence." (1 Smith's Leading Cases, 453 ; *Wilson* v. *Brett, supra ; Hinton* v. *Dibbin*, 2 Queen's Bench, 661 ; *Philadelphia R. R. Co.* v. *Derby*, 14 How. 486 ; *Steamboat N. W.* v. *King,*. 16 How. 474.)

The instructions which the court gave to the jury were correct, so far as they went. But it is contended that they did not go far enough, because they did not contain any instruction upon the evidence in the case, that the mistake in the message resulted from uncontrollable natural causes.

It would certainly have been the proper thing to have covered that point by the instructions. But if the instructions given in the case were incomplete, because they did not present the law applicable to all the points for which both parties contended, it was the right and privilege of either party to ask for proper instructions upon any omitted point. This was not done, and the party who failed in that respect to exercise his right cannot now be heard to complain. It is well settled, that a party cannot, in a court of error, avail himself of an omission in the charge of the court, where he made no request to the court on the subject. (*People* v. *Ah Yute*, 53 Cal. 613 ; *People* v. *Ah Wee*, 48 Cal. 237 ; *People* v. *Collins*, 48 Cal. 277 ; *Express Co.* v. *Kountze*, 8 Wall. 342 ; *Harter* v. *Carpenter*, 27 L. J. C. P. 1.)

The last assignment of error is that the court improperly refused to give the instructions asked by the defendant.

The plaintiff made out a *prima facie* case. That case could not be overcome by any mere rules or regulations of the company. As already stated, the company could not by its rules and regulations absolve itself or its officers from the exercise of that great care and diligence which the law and the circumstances of the case demanded.

One of the plainest of its obligations is to transmit and deliver the very message prescribed. " To follow copy, an imperative law of the printing office, is equally applicable to the telegraph office." (*New York & W. Tel. Co.* v. *Dryburgh*, 35 Pa. St. 298.) That could not have been done without understanding the meaning of the words used in the message, and the sender was not bound to explain it. Although the words may have been a jargon to the officers of the company, the officers were bound, without regard to the meaning of the words, to transmit and deliver them as they were written; and if that could have been done by repeating the message, the duty would seem to have been upon them to have had it repeated, in order to secure accuracy in its transmission and delivery.

The *Western Union* v. *Blanchard*, 68 Ga. 309, was an action to recover damages for a mistake in a cipher dispatch caused by the fault of the operator, and it was insisted, by way of defense, that the company was not liable for the consequences of the mistake beyond the amount fixed by the agreement between the sender and the company, which, in its terms, was similar to the agreement in this case. But the court said: " We can only say that any rule or regulation of the company which seeks to relieve it from performing its duty, belonging to the employment, with integrity, skill, and diligence, contravenes public policy as well as the law, and under it the party at fault cannot seek refuge. If it become necessary for the company, in transmitting messages with integrity, skill, and diligence, to secure accuracy to have said messages repeated, then the law devolves upon it that duty to meet its requirements. We know of no law in this state that limits their tolls on messages; this is under their own control. A message must be transmitted with integrity, skill, and diligence, and the mode of attaining accuracy in such work they have at their command—the compensation paid therefor the law does not seek to limit or restrict.

(28 Ga. 543 ; 58 Ga. 433 ; 34 Ga. 215 ; 1 Daly Tel. Cases, 288 ;
29 Md. 222 ; 27 Iowa, 432 ; 60 Maine, 530.) "

The rule or regulation as to repeating a message is therefore
not sanctioned by law; and to say that telegraph companies shall
only be liable for the amounts received for transmission, is
practically to excuse them altogether. So in *Tyler* v. *Western
Union Tel. Co.*, 60 Ill. 421, the Supreme Court of Illinois said:
" On the assumption that it is the duty of the company to trans-
mit correctly the message for which they have received com-
pensation, where in law arises any obligation on the part of the
sender to repeat the message ? * * * And as the receiver of
the message, it was not his duty to telegraph back to ascertain
the correctness of the message. The company was bound to
send the message correctly in the first instance. * * * We fail
to perceive any consideration whatever on which to base the so-
called contract, that the sender shall order the message repeat-
ed. The company have no right to demand of the sender an
assurance for the faithfulness of their own conduct. Such a
contract, forced as it is upon the sender, is not of any legal or
binding force."

Upon the subject of the liability of the company for a mis-
take in the transmission of an unrepeated message, there is, un-
doubtedly, a conflict of authorities; but, as we have already
stated, the rule deducible from all the cases is, that a mistake
in the transmission of a message is *prima facie* evidence of neg-
ligence, and the burden is on the company to show to the con-
trary; and if it be found that the mistake was due to the neg-
ligence of the company, or its servants, the company is liable
for all the loss occasioned by it, and the special contract be-
tween the company and the sender for the transmission of the
message is no defense. But if it be found that the mistake was
not due to the negligence of the company, the defendant is not
liable beyond the terms of any valid contract between the com-
pany and the sender, under which the message was transmitted.

I think there is no error in the record, and the judgment and
order appealed from should be affirmed.