## KIRBY V. WESTERN UNION TELEGRAPH CO.

1.  The statute law of this state (Sections 3881–3910, Comp. Laws) makes a telegraph company, which offers to the public to carry telegraphic messages, a common carrier of such messages.

2.  Such statutory provisions were not superseded nor repealed by Section 11, Art. 17, of the Constitution of the state, imposing upon the legislature the duty of providing reasonable regulations, by general law, for giving effect to the right of a corporation organized for such purpose to construct and maintain lines of telegraph within the state.

3.  While a common carrier may, in general, determine for himself the character and condition of what he will offer to and will carry, he cannot, by offering to carry under a qualified liability, constitute himself a common carrier with such liability only as he advertises to assume.

4.  A common carrier is under a legal duty to accept and carry whatever is offered to him, at a reasonable time and place, of a kind that he undertakes or is accustomed to carry, subject to the full liability of a common carrier, unless such liability is restricted by a valid agreement between such carrier and his employer.

5.  Such agreement, restrictihg the carrier's liability except "as to the rate of hire, the time, place and manner of delivery," can only be manifested by the signature of the passenger, consignor, consignee, or person employing such carrier.  Section 3888, Comp. Laws.

6.  Such modification of the common carrier's liability depends upon, and results from, the agreement of the parties, and the carrier cannot legally exact such agreement as a condition precedent to receiving or carrying the offered freight or message.

7.  As a common carrier a telegraph company cannot legally refuse to accept and transmit an offered message because the person offering will not sign an agreement that such carrier shall not be liable for damages in any case where the claim is not presented, in writing, within 60 days after the message is filed with the company for transmission.

8.  While such an agreement, when freely made, is binding, the carrier cannot exact it as a condition precedent to the discharge of his duty as such common carrier.

9.  In the afternoon of January 4th, respondent offered appellant, for transmission, a message confessedly unobjectionable, except that it was not written on or attached to one of appellant's message forms. Respondent declined to sign or agree to the stipulations printed on such blank, and for that reason appellant refused to receive or send his message.

Respondent then wrote a letter to the party to whom he desired to send the message, but still later, about 7 o'clock in the evening, went to the office of appellant, and sent a message upon one of its blanks, substantially like the one previously refused. *Held,* that appellant's refusal to send the first message constituted a refusal within the meaning of Section 3910, Comp. Laws, and that the sending of the second message was neither a cure of the wrong upon the part of appellant, nor a waiver of it on the part of respondent.

10. Where, upon undisputed facts, no other verdict than the one returned could have been properly rendered, this court will not examine an alleged error in allowing the jury to separate temporarily without being admonished by the trial court not to converse among themselves, or with others, upon the subject of the trial, as it is evident that no prejudice resulted therefrom.

(Syllabus by the court. Opinion filed July 5, 1893.)

Appeal from Minnehaha county court. Hon. E. PARLIMAN, Judge.

Action by Joe Kirby against the Western Union Telegraph Company to recover damages for refusal to send a message. Judgment for plaintiff. Defendant appeals. Affirmed.

*Bailey & Voorhes, (George H. Fearsons, of Counsel,)* for appellant.

A common carrier may make reasonable rules and regulations for the convenient transaction of business between himself and those dealing with him, and thus, to some extent, limit his common law liability. Wheeler on Carriers, 130; Gray on Telegraph, § 13; Bartlett v. Western Union, 62 Me. 209; State v. Chavin, 7 Ia. 204; Commonwealth v. Powers, 7 Mets. 596; State v. Gould, 53 Me. 279; Railroad v. Rose, 11 Neb. 177; Crocker v. New London, 24 Conn. 249; Hibbard v. Railroad, 15 N. Y. 455; Bennett v. Railroad, 7 Phila. 11; Hill v. Syracuse' 63 N. Y. 101; Lillis v. Railroad, 64 Mo. 464; Kiley v. Telegraph, 109 N. Y. 231; U. S. Telegraph v. Gildersteere, 29 Md. 232; Western Union v. Dozier, 7 Southern 325; Breese v. Telegraph, 48. The requirement that a sender of a message should have it repeated to hold the company liable for mistakes is a reasonable one. Ellis v. Telegraph, 13 Allan,

226; Redpath v. Telegraph, 112 Mass. 71; Clenient v. Telegraph, 137 Mass. 463; Grinnell v. Telegraph, 113 Mass. 299; Phillips v. Earle, 8 Pick. 182; Dunlap v. International, 98 Mass. 371; Telegraph v. Carew, 15 Mich. 525; Wann v. Telegraph, 37 Mo. 472; Beeker v. Telegraph, 11 Neb. 87; Mowny v. Telepraph, 4 N. Y. 666; Kiley v. Telegraph, 109 N. Y. 231; Lassiter v. Telegraph, 89 N. C. 334; Pegram v. Telegraph, 2 S. E. 256; Camp v. Telegraph, 1 Mete. 164; Hame v. Telegraph, 9 Phil. 88; Aiken v. Telegraph, 5 S. E. 358; Telegraph v. Hearn, 13 S. W. 970; Jones v. Telegraph, 18 Md. 341.

It is a proper restriction for a telegraph company to require notice of claims for its defaults within a reasonable time before being held to answer for the alleged default. Wolf v. Telegraph, 62 Pa. St. 83; Lewis v. Railroad, 5 Hurl. & N. 867; Telegraph v. Dougherty, 15 S. W. 468; Heinman v. Telegraph, 57 Wis. 562; Massengale v. Telegraph, 17 Mo. App. 257; Telegraph v. Meredith, 95 Ind. 93; McKinney v. Telegraph, 5 Tex. Law Rev. 173; Hartwell v. Northern, 5 Dak. 463; Thompson Law Electricity, § 197; Green v. Telegraph, 24 Fed. 119; Myrick v. Railroad, 107 U. S. 102; Railroad v. Mfg. Co., 16 Wall. 318; Id. v. Pratt, 22 Wallace 123; Ins. Co. v. Railroad, 104 U. S. 146. In the absence of a special agreement to that effect a common carrier's liability does not extend beyond its lines. Leanard v. New York, 41 N. Y. 544; Baldwin v. Telegraph, 45 N. Y. 744; Squire v. Telegraph, 98 Mass. 232. Common carriers are not liable for loss occasioned by "the act of God." Shouss v. Wabash, 17 Fed. 209; Smyrl v. Niolin, 2 Bailey, 421; Williams v. Grant, 1 Com. 487; Calt v. McMechem, 16 Johns. 160; Blythe v. Railroad, 15 Colo. 333.

*A. C. Boylan* and *Joe Kirby*, for respondent.

It is only by a special contract that a common carrier can be released from a portion of that liability the law would otherwise impose upon him. Hutchinson on Carrier, § 237. A common carrier cannot refuse to receive property for transportation because the consignor will not enter into a special contract

as to the liability therefor.   McMillon v. Railroad, 16 Mich, 79; Railroad v. Hull, 6 Mich. 243; Hartwell v. Northern, 5 Dak. 463.

KELLAM, J.   On the 4th day of January, 1892, the respondent offered to the appellant, at its office in the city of Sioux Falls, a written message, confessedly unobjectionable in matter, and requested that it be transmitted in the usual way to the party to whom it was addressed, and then and there offered to pay the usual compensation therefor.   The message was written on ordinary white writing paper.   The company declined to send the same unless written upon, or attached to, one of its message blanks.   This the respondent refused to do unless the stipulations contained in such message blank should be first erased, so that he would not be bound thereby.   Under these circumstances the message was refused by the company. Upon these facts, which appear to be undisputed, respondent brought an action against the appellent company to recover actual damages, and $50 in addition thereto, under Section 3910, Comp. Laws.   The Section reads as follows:   "Every person whose message is refused or postponed, contrary to the provisions of this chapter, is entitled to recover from the carrier his actual damages, and fifty dollars in addition thereto." Upon the trial the respondent proved his actual damages, and had a verdict for 25 cents actual and $50 statutory damages.   Upon this verdict judgment was entered, a new trial refused, and the company appeals.

While other assignments of error, which will be hereafter noticed, were presented and argued, it is evident that the major question is the right of the appellant company to insist upon the message being received and sent subject to the stipulations contained in the message blank, and, if the person offering the message refuse to agree thereto, to decline to receive or transmit the same.   If the law sustains the company's right to so insist, or to refuse the message, then, upon the facts in

this case, respondent should not have recovered, for it is un-contradicted that the message was refused upon the distinct ground that the respondent positively declined to have it sent subject to the stipulations printed upon the message blank.

By the statute law of this state, (Section 3881, Comp. Laws,) "every one who offers to the public to carry persons, property, or messages is a common carrier of whatever he thus offers to carry." That the word "messages," as here used, was intended to include telegraphic messages, is evident from the closely-following sections, wherein a "carrier by telegraph" and a "carrier of messages by telegraph" are expressly named, and their duties as such defined. From the adoption of the Civil Code, in 1872, until the legislative session of 1873–74, the State of California had the same statutory provisions, but at the session named the above-quoted section was amended by insert-ing an express exception of 'telegraphic messages." During the short time such original provision was there in force, we do not find any reported case in which it was considered. Prior to the adoption of such Code provision the supreme court of that state had held in Parks v. Telegraph Co., 13 Cal. 422, that the defendant company, as a general telegraph company, was a common carrier; but the decisions of the courts have been, with great unanimity, against this view, and under the amended statutes it is now so held in California. Hart v. Telegraph Co., 66 Cal. 579, 6 Pac. Rep. 637. Appellant, however, advances the proposition that these provisions of the old Civil Code, being the sections of the Compiled Laws, above cited, which declare telegraph companies to be common carriers, are superceded and repealed by, because inconsistent with, the constitution. This contention is founded largely upon Section 11, Art. 17, of the constitution: "Any association or corporation organized for the purpose, or any individual, shall have the right to con-struct and maintain lines of telegraph in this state, and to con-nect the same with other lines, and the legislature shall by gen-eral laws, of uniform operation, provide reasonable regulations

to give effect to this section.    No telegraph company shall consolidate with, or hold a controlling interest in the stock or bonds of, any other telegraph company owning a competing line, or acquire, by purchase or otherwise, any other competing line of telegraph."    We think appellant claims too much for this section.    It simply declares the right of an association, corporation, or individual to construct and maintain telegraph lines within this state, and to connect them with other lines, and then forbids the consolidation of competing lines.    To carry into effect this general right to construct and maintain, and this prohibition against consolidation, the legislature is charged with the duty of providing suitable and reasonable laws and regulations, of uniform operation; regulations by and under which the right to construct and maintain may be used and exercised, and the prohibition of consolidation be enforced.    We are not convinced that there is anything in the constitutional section which would forbid the legislature now, if it had never been done before, to impose upon telegraph companies the character and duties of common carriers.    But, even if we understand this constitutional section to mean that the legislature should provide reasonable regulations for the conduct of the current business of telegraph companies, we should not think it had the retroactive effect of repealing former legislation, even though assailed as unreasonable.    It is a general rule that neither constitutions nor statutes should be so construed as to have a retroactive effect, unless such intention is clearly expressed.  Cutting v. Taylor, (S. D.) 51 N. W. Rep. 949; Cooley Const. Lim. pp. 62, 63; Suth. St. Const. §§ 463, 464; Allbyer v. State, 10 Ohio St. 589; People v. Gardner, 59 Barb. 198; *Ex parte* Burke, 59 Cal. 6. Although peculiar to our state, and the statute itself an exceptional one, I think we must recognize its effect to be to make, in this jurisdiction, a telegraph company "a common carrier of whatever it thus offers to carry," and its duty to receive and transmit respondent's message must be tested by its rights and

duties as a common carrier.    An individual or corporation becomes a common carrier of just what it offers to carry.    Its duty to the public springs from its offer to the public, and must be measured by it; so that the carrier who only offers to carry grain in canvas sacks cannot be required to carry grain in bulk. But while the carrier may thus, in general, determine for himself the character and condition of what he will carry, he cannot, by offering to carry for the public under a qualified liability, constitute himself a common carrier with such a liability, only, as he advertises to assume.    As a common carrier it was appellant's legal duty, if able to do so, to accept and transmit respondent's message, if offered at a reasonable time and place, and if it was of a kind that it undertook or was accustomed to carry.    Section 3882, Comp. Laws.    The ability of appellant to receive and transmit the message; that it was offered at a reasonable time and place; and that the message itself, except as to the paper on which it was written, was of a kind that it was accustomed to carry, are not disputed.

The dominant question in this case, upon the merits, being whether the stipulations upon the message blank, or any of them, so far restricted appellant's liability as a common carrier as to justify respondent's refusal to consent to them, as a condition of having his message accepted and sent by appellant, we have thought it just to both parties to examine them severally, expressing our opinion upon each, so far as they are involved by the facts in this case.    It is not claimed that either of the regulations or stipulations printed upon the message blank, and which respondent was required to assent to, offended against the rule of impartiality, which appellant, as a common carrier, was bound to observe.    Respondent, however, strenuously insists that the stipulation on the printed blank would, if assented to by him, have the effect of relieving the company from a liability imposed upon it by law, as a common carrier, and consequently he ought not to be compelled to agree to it, as a condition of having his message sent.

The first matter objected to is as follows: "To guard against mistakes or delays, the sender of a message should order it repeated; that is, telegraphed back to the original office for comparison. For this, one-half the regular rate is charged, in addition." So much is only explanatory and advisory. Then follows: "It is agreed between the sender of the following message, and the company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery, of any unrepeated message, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for nondelivery, of any repeated message, beyond fifty times the sum received for sending the same, unless specially insured, nor, in any case from unavoidable interruption in the working of its lines, or for errors in cypher or obscure messages." Then follows the rates for sending insured messages. The order in which the rates, terms, and conditions are stated upon which the company would receive and transmit this message are, of course, not important. The essential thing to know is, did they tally with the duty of the company, as a common carrier. As such common carrier, it must insure, subject to conditions and exceptions hereinafter noticed, the correct transmission of the message, for which it was entitled to a just and reasonable compensation. This, by the printed form, it offered to do, and stated the compensation. There is no claim that the compensation named for such service was not just and reasonable, and no such question was raised. The effect of the printed condition is the same as though the rate for an insured message—that is, the compensation for assuming all the duties of a common carrier—had been first stated, and then had followed an offer that for a less compensation it would send the message without incurring the full liability of a common carrier. It left the respondent free to exercise his election as to which offer he would accept, and determine for himself whether he would pay the company for insuring the correct transmission of the message, as a common

carrier, or pay less, and assume a part of the risk himself. A common carrier may have two rates for the transportation of goods,—one covering its full common-law liability,—the other, a special or limited liability,—so long as the shipper has a choice between them, at reasonable rates. He cannot be denied the right to have his goods carried by the carrier under its common-law liability, but if he desires, and neither statute nor public policy forbid, he may enter into a special contract with the carrier, limiting its common-law liability. Railroad Co. v. Dill, 48 Kan. 210, 29 Pac. Rep. 148. It is matter of common knowledge that the sending office marks upon the message form the rate or compensation paid, and thus is preserved, for the protection of both parties, some evidence, at least, of the election of the sender, and the resulting contract. It was entirely competent for the appellant to limit by special contract its obligation as a common carrier. Section 3886, Comp. Laws. The respondent was not obliged to make such a contract unless he chose. It was a matter of agreement between them. Parties who use telegraph lines are usually economical of their time. In most cases it is important that messages go at once. There is generally little time or opportunity for negotiation. As an expeditious and direct means of bringing both parties to a definite understanding, the company provides and furnishes to the public message forms containing its proposal of terms. The sender of a message may elect either. One of its offers covers its duty and liability as a common carrier. The sender may pay the tariff fixed for that service, and hold the company to its liability as a common carrier. We are unable to perceive how the offer of the company to qualify its full liability as a common carrier, and accept a less compensation therefor, if the sender so desires, can affect the rights of either. The offer only becomes binding when accepted and signed, and the sender is under no compulsion. He may pay for and get the full liability of a common carrier, or pay

less, and get a limited liability.    The causes or conditions named
in the stipulation as excusing full performance of the company's
obligation, and as a common carrier, are "unavoidable inter-
ruption in the working of its lines," and "errors in cypher or
obscure messages."    An "unavoidable interruption." is one that
cannot or could not be avoided; and while the courts have not
been strictly at one in their views as to what, in modern times,
should be regarded as equivalent to "the act of God or the pub-
lic enemy," of the old authorities, our statute (Section 3899)
expressly makes "any irresistible superhuman cause" sufficient
ground for avoiding the common carrier's liability, and Sec-
tion 3880 definitely fixes the measure of a telegraph company's
duty in the transmission of messages to be the exercise of the
"utmost diligence."    We should be unwilling to rule, as a mat-
ter of law, particularly in view of the peculiar nature of tele-
graphic communication, that the utmost diligence could pre-
vent, or successfully guard against, an "unavoidable interrup-
tion in the working of its lines."    It may sometimes be a ques-
tion for the jury whether the facts in a particular case bring it
within the rule, but, where the interruption is proved to be
broadly unavoidable, we think the company would not be liable.
Whether, strictly, as a common carrier, appellant could exact,
as a condition of the acceptance and transmission of a cypher
or obscurely written message, that the sender should release it
from liability for an incorrect sending, we need not now deter-
mine, for the refused message was confessedly neither.

It was further provided, as one of the stipulations to which
respondent should consent, as a condition of sending his mes-
sage, that "no responsibility regarding messages attaches to
the company until the same are presented and accepted at one
of its transmitting offices."    This would seem to be quite con-
sistent with the provisions of our statute making the carrier's
duty to commence when whatever is to be carried is offered "at
a reasonable time and place;" but that, like the stipulation as
to cypher and obscurely written messages, is not a question in

this case, for it is undisputed that the message was offered at the proper office of the appellant, so that such stipulation could not restrict or affect appellant's liability to respondent in this case.

Another stipulation of the message blank was that "the company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within sixty days after the message is filed with the company for transmission." Appellant here insists that this condition does not propose, nor is its effect, to limit in any way its responsibility as a common carrier, but is rather in the nature of a reasonable regulation, which appellant has a right to make, and which respondent, without any special contract on his part, was bound to observe, and cites cases in support of that view, notably that of Express Co. v. Caldwell, 21 Wall. 264. That case came before the court on plaintiff's demurrer to defendant's plea averring an express agreement upon the part of the plaintiff shipper that defendant should not be liable for loss or damage unless claim therefor was made within 90 days, and the question presented and decided was whether such an agreement, when made was binding on the plaintiff. As to the necessity for an agreement in order to so qualify its liability, the court says: "Certainly it ought not to be admitted that a common carrier can be relieved from the full measure of that responsibility which ordinarily attends his occupation, without a clear and express stipulation to that effect obtained by him by his employer;" thus treating the stipulation in question not as a reasonable regulation, which it was competent for the carrier to make, and binding on the shipper without his consent, but as an agreement depending upon the consent of both parties. The court held that such an agreement was not such an attempted restriction of the carrier's responsibilities as would be invalid, but being reasonable, and fully assented to by both parties, it was binding; but that is not equivalent to saying that the carrier could compel the shipper to enter into such a con-

tract, or require it as a condition of accepting his shipment. The very fact that such limitation of liability is the subject of agreement between the parties, implies that either party may refuse to make such agreement, However such agreement may be proved elsewhere, our statute provides that here it can only be manifested by the signature of the consignor, etc. Section 3888, Comp. Laws. In Hartwell v. Express Co., 5 Dak. 463, 41 N. W. Rep. 732, our territorial supreme court rejected the defense of the carrier that the claim of loss upon which the action was founded was not presented to the company within the time specified in its receipt, upon the distinct ground that under the controlling statute just referred to there was no special contract so providing or binding upon the parties. It was a rule or regulation of the company, and as such was printed in the receipt delivered to the consignor, but the court held that it did not operate to make the liability of the company differ in any respect from what it would otherwise be, because, not being signed by the consignor, it was not a special contract, as required and defined by the statute. Now if, without such special contract, the liability of the carrier is not thus limited, and with it it is, can the carrier refuse the offering of a shipper of "whatever it is accustomed to carry," unless he will so contract to limit the carrier's liability? We think not. The carrier's duty is to receive and carry subject to the full measure of liability, unless restricted by mutual agreement; and except as to "rate of hire, the time, place and manner of delivery," such an agreement can only be shown by the signature of the shipper or sender. In Tied. Lim. pp. 256, 257, the learned author, after recognizing and discussing the right of a common carrier to modify and restrict its liability by special agreement with its patron or employer, says: "But the contract must be freely and voluntarily made. The carrier cannot refuse to take goods for carriage under the common law liability if the consignor should refuse his assent to a limitation." To the same effect, see New Jersy Steam Nav. Co. v. Merchant's Bank

6 How. 344.   Nor can a carrier require of a shipper a waiver of any of his rights as a condition precedent to receiving and carrying his freight.   Railroad Co. v. Fagan, (Tex. Sup.) 9 S. W. Rep. 749.   To sustain such a stipulation, where fairly made, is only to concede the right and power of the parties to make it, and comes far short of meaning that the carrier may exact the making of it as a condition precedent to the discharge of his duty as a common carrier.   The statute was evidently intended to settle within this jurisdiction the question of how, and to what extent, the general liability of a common carrier may be limited; and by providing, as it does, that it can only be accomplished by a special agreement, it has deliberately left it with either party to consent, or to refuse to consent, to such an agreement.   The right to exercise such freedom of will by the respondent in this case would be denied and destroyed if he were compelled to consent under penalty of having his message refused.   It has been suggested that respondent could found no right of action upon refusal of appellant to transmit his message unless he would agree to the stipulation, because, if made under such compulsion, it would not be enforceable against him, and therefore harmless; but such conclusion would be consistent with neither the duty of the appellant, nor the right of the respondent.   This right and this duty were correlative, and each was a measure of the other.   Whatever respondent had a right to have sent, it was appellant's duty to send.   If it was respondent's right to have his message transmitted without agreeing to this condition, it was appellant's duty to transmit it without imposing such condition; and it could not justify a refusal to send on the ground that the stipulation sought to be exacted as a condition precedent might, by proper effort on his part, be avoided by respondent, because made under compulsion, or because void and nugatory, (if such statute should be held to apply to such a case,) under Section 3582, Comp. Laws.

Following the line of these views, we are of the opinion

that appellant could not, as a common carrier, legally require respondent to enter into the agreement which we have just discussed, and so that it could not legally refuse to receive and transmit his message because he declined to make such agreement. Of course this decision will not be understood as touching the question of the company to make and enforce reasonable general regulations for the convenient and orderly transaction of its business, and for the proper protection of its interests, consistent with its duties as a common carrier. The appellant did not object to respondent's message because it was written on respondent's letter head, instead of on a message blank, and so inconvenient for filing or preservation in accordance with the practice of appellant. Respondent offered to use the blank if appellant would erase the contract which he would otherwise be required to assent to in using it. The issue between the parties was distinctly as to the right of appellant to require assent to the stipulations restricting its liability as a common earrier, and this decision covers only that question. Its refusal to receive and transmit respondent's message, under the facts proved, constituted a refusal, within the meaning of Section 3910, Comp. Laws. Such refusal gave respondent a cause of action, and his right of action was not destroyed or affected by the fact that he afterwards sent substantially the same message. If to refuse the first message was an actionable wrong to respondent, persistence in it by appellant, to the extent of compelling respondent to submit to it, and to send another message on appellant's terms, did not cure or undo the first wrong. The testimony seems to show that respondent offered and attempted to have his message sent in the afternoon, between 2 and 4 o'clock; that it was refused under the circumstances above recited; that he then wrote a letter to the party to whom he desired to send the message, but subsequently, and that evening, about 7 o'clock, feeling doubtful of its reaching the party in time, he went to the office, and sent upon one of the appellant's blanks a message of very nearly the tenor of

the message previously refused.    There was nothing in this to waive the wrong of the refusal, or affect respondent's legal right to complain of it.

Finally, it is assigned as error that during the trial the jury was allowed to separate for a few moments without being admonished by the court, as required by Section 5051, Comp. Laws, not to converse among themselves, or with others, upon the subject of the trial.    Whether, in any case, this fact alone would constitute reversible error, it is not now necessary to determine.    The facts were not in dispute, and the law, as we understand it, applied to the conceded facts, plainly required the verdict which the jury rendered.    Under such circumstances the appellant could not have been prejudiced.    The judgment of the county court is affirmed.    All the judges concurring.