| 58 | 433 |
| 92 | 615 |

</div>

THE WESTERN UNION TELEGRAPH COMPANY, plaintiff in error, *vs.* THEOPHILUS S. FONTAINE, defendant in error.

1. Where a message is delivered to a telegraph company for transmission, it occupies the legal status of a bailee for hire, and not that of a common carrier ; and if such message be not sent as directed, such company is liable for the damages resulting therefrom, unless it shows that the diligence necessary and appropriate to that peculiar business has been exercised.

WARNER, Chief Justice.

2. An agreement that " the company shall not be liable for errors or

delays in the transmission or delivery, or for non-delivery of such messages, from whatever cause occuring," will not relieve it from liability for the damages resulting from its failure to transmit a message by reason of its own gross negligence. Such a contract the law does not recognize.

See concurring opinions of BLECKLEY and JACKSON, Judges.

Corporations. Contracts. Damages. Negligence. Befor Judge CRAWFORD. Muscogee Superior Court. November Term, 1876.

Reported in the decision.

THORNTON & GRIMES, for plaintiff in error.

J. M. & R. A. RUSSELL, for defendant.

WARNER, Chief Justice.

The plaintiff brought his action against the defendant to recover damages, which he alleged he had sustained in consequence of the breach of duty and negligence of the defendant, in failing to send and deliver a certain described telegraph message, received by it from the plaintiff at Columbus, Ga., to be transmitted, for a certain stipulated reward, to Nourse & Brooks, at the city of New York. On the trial of the case, the jury, under the charge of the court, found a verdict in favor of the plaintiff for the sum of $363.00. A motion was made for new trial on the several grounds of error alleged therein, which was overruled by the court, and the defendant excepted. It appears from the evidence in the record that, on the 9th of December, 1872, the plaintiff handed the paper, of which the following is a copy, to the defendant's agent at Columbus, Ga. :

["HALF RATE MESSAGES.]

"The Western Union Telegraph Company will receive messages for all stations in the United States, east of the Mississippi river, to be sent during the night, at one-half the usual rates, on condition that the company shall not be liable for errors or delay in the transmission or delivery, or for non-delivery, of such messages, from whatever cause oc-

curring, and shall only be bound in such case to return the amount paid by the sender. No claim for refunding will be allowed, unless presented in writing within twenty days.

"WILLIAM ORTON, *President.*

" O. H. PALMER, *Secretary.*

"DECEMBER 9TH, 1872.

"Send the following message, subject to the above terms, which are agreed to:

" *To Messrs. Nourse & Brooks, 76 Beaver street, New York:*

" Exercise your own discretion as regards covering December contract. T. S. FONTAINE."

Plaintiff testified that he handed the foregoing message to Coleman, one of the defendant's operators, at the office of the company in the city of Columbus, on the evening of the 9th of December, 1872, and paid fifty cents, the usual amount for a night, or half-rate, message. Witness knew that there was a difference in the obligation and liability of the company on night messages, and those sent in the day; did not ask to have the message repeated, nor offer to pay for the same. Plaintiff proved by Nourse & Brooks that the message was not received by them, and also proved the damage sustained in consequence thereof in the sale of the plaintiff's cotton. Harrell and Coleman, the defendant's agents and operators at Columbus, testified as to the receipt of the message from plaintiff, and that the same was forwarded from that office on the night of its reception to some repeating office between Columbus and New York; that plaintiff, previous to the 9th of December, 1872, had frequent dealings with defendant, and transacted most of his business upon red, or night, messages. The court charged the jury, amongst other things, in substance, that the defendant was a *quasi* common carrier, and liable, as such, for its failure to deliver messages received by it, and could not limit its legal liability by any notice given by publication, or by entry, on receipts given. The legal effect of the charge of the court was to make the defendant liable for the safe delivery of all messages received by it for transmission, either by night or day, in the same manner, and to the same extent, as a common carrier of goods is made liable by the law of this state.

1. What is the exact measure of the defendant's liability in this state, under the existing laws thereof, is a question to be decided for the first time by this court, and we are, therefore, at liberty to decide it in accordance with the general principles of law applicable to that particular business, in the absence of any statutory regulations concerning it. When a person, either natural or artificial, undertakes any employment, trust, or duty, such person contracts with those who employ or entrust him, or it, to perform that employment, trust, or duty, with that integrity, diligence, and skill, which belongs and appertains to that particular employment, and if by the want of either of those qualities, any injury occurs to those who employ him, or it, for a reward, an action on the case may be maintained therefor to recover damages. The defendant, as a telegraph company, by its machinery, undertakes to transmit messages from one place to another for hire, for those who may think proper to employ or entrust it with that particular business. In the absence of any statutory regulations, what is the measure of the defendant's liability for neglect of duty in carrying on the particular business in which it is engaged? Is it liable as a common carrier, or *quasi* common carrier, as defined by the laws of this state? It may be stated as an incontrovertible legal proposition, that every power exercised by any court, must be found in, and derived from, the law of the land, and also be exercised in the manner that law prescribes. *Gray vs. McNeal*, 12 *Ga. Rep.*, 424. What law of this state authorizes the courts thereof to declare that a telegraph company, using its peculiar machinery for the transmission of messages from one point to another, is a common carrier, or a *quasi* common carrier, and liable as such for its neglect of duty in the particular business in which it is engaged? We know of none; but, on the contrary, the true nature and character of its liability would seem to be that of a bailee for hire. The sender of a message bails, or entrusts, it to the defendant for a certain purpose, and the defendant undertakes to accomplish that pur-

pose by doing some work, and bestowing some care on the thing bailed, for a stipulated reward. Bailees, under the law of this state, are not insurers against loss or damage to the thing bailed, but are required to exercise care and diligence in protecting, and keeping safely, the thing bailed. In all cases of bailment in this state, after proof of loss, or damage, the burden of proof is on the bailee to show proper diligence. Code, §2064. The plaintiff proved at the trial, the loss or non-delivery of the message bailed to the defendant for transmission to the place of its destination, and the damage sustained in consequence thereof.

2. The defendant, however, insists that it is not liable to the plaintiff by reason of the agreement set forth in the record, which was signed and agreed to by the plaintiff when he left the night-message to be sent by it. The objection to that agreement is, that it is broad and comprehensive enough to protect the defendant from liability from its own *gross negligence* in failing to transmit or deliver messages, which the law does not allow to be done. The words of the agreement are, "on condition that the company shall not be liable for errors or delay in the transmission or delivery, or for non-delivery of such messages, *from whatever cause occurring.*" If the words "except by the defendant's own negligence" had been inserted in the agreement, it would have been reasonable, and legally binding on the plaintiff, who had knowledge of the terms thereof.

In our judgment, the evidence in the record made out a *prima facie* case of gross negligence on the part of the defendant. The message was sent by the defendant's agent and operator at Columbus, "to some repeating office between that point and New York." What repeating office? Inasmuch as the defendant had the exclusive control of its own machinery, operatives, and agents, it should have shown to what repeating office the message was sent, and whether it was received there, and if so, what then became of it? So far from even doing this, the defendant offered no explanation whatever, only that the message had been sent to

*some* repeating office between Columbus and New York. Although the charge of the court was erroneous, still the verdict was right under the evidence, and the law applicable thereto, and we will not disturb it.

Let the judgment of the court below be affirmed.

BLECKLEY, Judge, concurring.

In am inclined to the opinion that the business of telegraphing consists merely in receiving orders for work and labor, and executing them. Strictly speaking, there is no bailment, and, therefore, no carriage of property. The sender of a message gives an order for certain work to be done, and the telegraph company undertakes to do it. A part of it is performed by the use of scientific machinery, and a part by the carriage and delivery of a paper which is not bailed to the company, but which the company furnishes and prepares for itself. While I take this view of the matter, I do not think the company can stipulate against liability for its own gross negligence. In no business carried on for reward can that be done.

I concur in the judgment.

JACKSON, Judge, concurring.

I concur in the judgment of this court affirming that of the court below ; but I wish to say that I am inclined to think that the business of a telegraph company is very similar to that of a common carrier, and approximates very nearly to that business. The telegraph company undertakes to *carry* and deliver a message from one point to another; and, whilst it does not carry the identical piece of paper on which the message is written, nor undertakes to do so, yet it does agree to carry and deliver the message itself—the sense and substance of the letter which is delivered to it at the place from which it starts. It agrees to re-write the message at the place of destination, and to carry it, thus re-written, to the place of business, or the residence, of the party or

persons to whom it is directed. It is immaterial, in my judgment, that the carrier does not carry, or bargain to carry, the worthless thing on which the valuable substance is written, provided he carries, or agrees to carry, that valuable substance itself; or by what means he shall carry that substance, whether by steam over a railroad, or by electricity over wires. Its obligation is to *carry* and deliver a message, on which most important business transactions may depend. Its obligation is to carry this message very rapidly, and it charges increased compensation for so carrying and delivering. It is chartered for that purpose, and is bound by the charter and the very nature of its business, to carry for everybody who will pay it. It acts, therefore, not only as a carrier, but as a *common* carrier; and, therefore, I am not prepared to say that the court below committed error in denominating it as a *quasi* common carrier, and in applying the rules which govern that bailment to the telegraph company. The latest commentators, and the current of the authorities, seem to concur in this view of the law, and to apply the rules governing common carriers to telegraph companies.