| | |
|---|---|
| 68 | 299 |
| 85 | 430 |
| 68 | 299 |
| 92 | 615 |

| | |
|---|---|
| 68 | 299 |
| 101 | 211 |

| | |
|---|---|
| 68 | 299 |
| 102 | 761 |
| o102 | 809 |

| | |
|---|---|
| 68 | 299 |
| 128 | 238 |
| 128 | 239 |

PRESENT—JAMES JACKSON, . . . . . CHIEF JUSTICE.
MARTIN J. CRAWFORD, . . ASSOCIATE "
ALEXANDER M. SPEER, . . " "

---

## THE WESTERN UNION TELEGRAPH COMPANY *vs.* BLANCHARD, WILLIAMS & COMPANY.

1. When a telegraph company for a compensation receives a message for transmission over its wires, it is bound to perform its contract with that integrity, skill and diligence which appertain to its particular business ; and if by reason of the want of any of these qualities the message be improperly transmitted and injury accrues to the sender, the company will be liable to him for damages.

(*a.*) This is true whether the telegraph company be considered as a bailee for hire, a common carrier, or merely as one employed to do certain work. 58 *Ga.* 433.

2. Any rule of the company which seeks to relieve it from performing the duty belonging to its employment with integrity, skill and diligence is contrary to public policy. If, therefore, it is necessary for the company, in transmitting messages with integrity, skill and diligence, to have them repeated, the duty of so doing devolves upon it, not upon the sender.

(*a.*) The charge for transmitting messages in this state is fixed by the company, not by law.

3. A telegraph company cannot by any rule or regulation of its own protect itself against damages resulting from every degree of negligence except gross negligence or fraud.

v 68—21

(*a.*) Nor can it by such rule or regulation limit the damages to be recovered to a return of the amount of toll paid out for sending the message.

4. Where a rule of a foreign telegraph company doing business in Georgia required persons damaged by failure to properly transmit messages to present their claim for damages within sixty days thereafter to some agent of the company, authorized to exercise its corporate powers in relation to the subject matter of the claim, a presentation of such a claim to the resident agents who made the contract and transmitted the message was sufficient.

5. A message in these terms: "Cover two hundred September and one hundred August," was shown to be in the ordinary expressions used in the cotton trade, meaning that the person receiving the message should sell for the sender two hundred bales of cotton deliverable in August and one hundred deliverable in September:

*Held*, that it was not such an obscure message as would limit the usual liability of the company or furnish the basis for a charge that a hidden meaning of the sender not discoverable by the company would not be a ground of its liability.

(*a.*) There was at least enough on the face of the message to show the company that it was a commercial message of value, and that is sufficient to render the company liable for negligence or improper transmission.

6. Although a speculation in cotton futures may be an illegal contract, yet an agent who incurs expense or loss on behalf of his principal in carrying out such contract may recover the amount thereof from such principal. If such loss or expense was caused by the improper transmission of a telegram from the principal to the agent, the former on paying the loss to the agent would have sustained a damage through the negligence of the telegraph company for which he could recover from it.

(*a.*) The illegality of the speculation would not relieve the company from damages resulting from its negligence in transmitting a telegram according to its contract for a valuable consideration.

Telegraph Companies.   Damages.   Negligence.   Contracts.   Cotton Futures.   Before Judge WILLIS.   Muscogee Superior Court.   November Term, 1881.

To the facts reported in the decision, it is only necessary to add that the defendant moved for a new trial on the following, among other grounds:

(1.) Because the court refused to charge the jury that

telegraph companies may limit the measure of their liability to damages by reasonable rules and regulations brought home to the knowledge of, and attended to, by those with whom they deal, and that a rule of a telegraph company requiring important messages to be repeated in order to guard against mistakes in transmitting them, and charging one-half the usual rate for such repetition, and that the company will not be responsible for mistakes in the transmission of unrepeated messages is reasonable, and such as the company may adopt; and it will not be liable for an error in an unrepeated message except for fraud or gross negligence.

(2.) Because the court refused to charge the jury that the rule in regard to insuring important messages by contract in writing, as contained in the said printed blank of said defendant, is also a reasonable one, and in the absence of such insurance the company is only liable for fraud or gross negligence.

(3.) Because the court refused to charge the jury that if the testimony shows that the message which plaintiffs allege was delivered by them to defendant on the 19th day of May, 1879, for transmission to Waldron & Tainter, New York, was written by said plaintiffs, or any one of them, or any member of their firm, on a printed blank of defendant in the words and figures following:

"THE WESTERN UNION TELEGRAPH COMPANY.

All messages taken by this company subject to the following terms: To guard against mistakes or delays, the sender of the message should order it repeated; that is telegraphed back to the originating office for comparison. For this one-half the regular rate is charged in addition. It is agreed between the sender of the following message and the company that said company shall not be liable for mistakes or delays in the transmission or delivery or for non-delivery of any unrepeated message whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery or for non-delivery of any repeated message beyond fifty times the sum received for sending the same, unless specially insured; nor in any case for delay arising from unavoidable interruption

in the working of its lines, or for errors in cipher or obscure messages. And this company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other company when necessary to reach its destination.   Correctness in the transmission of messages to any point on the lines of this company can be insured by ·contract in writing, stating agreed amount of risk, and payment of premium thereon at the following rates, in addition to the usual charge for repeated messages, viz : one per cent. for any distance not exceeding 1,000 miles, and two per cent. for any greater distance.   No employé of the company is authorized to vary the foregoing.

No responsibility regarding messages attaches to this company until ·the same are presented and accepted at one of its transmitting offices, and if a message is sent to such office by one of the company's messengers, he acts for that purpose as the agent of the sender.   Messages will be delivered free within the established free delivery limits of the terminal office ; for delivery at a greater distance a special charge will be made to cover the cost of such delivery.   The company will not be liable for damages in any case where the claim is not presented in writing within sixty days after sending the message.

    A. R. BROWN, *Secretary*,        NORVIN GREEN, *President.*"

"COLUMBUS, GA., May 19th, 1879.

Send the following message, subject to the above terms, which are agreed to.

*To Waldron & Tainter, 97 Pearl st., New York.*
    Cover two hundred September, one hundred August.
        (Signed)        BLANCHARD, WILLIAMS & CO."
    [Paid.]
    "Read the notice and agreement at the top,"

and that said plaintiffs assented to said rules and regulations, then the said rules and regulations became and were the agreement and contract between the said parties, and said plaintiffs can not recover, unless they show that they had said message repeated or requested to have it repeated, and paid or offered to pay for the same, any greater sum than the tolls paid by them with the legal interest thereon.

(4.) Because the court refused to charge the jury as follows: That if the jury shall believe from the testimony that the message sent by plaintiffs in this case, or delivered to defendant to be sent, was an obscure or unintelligible message, and that its meaning was unknown to

defendant or its agents, and that there was no notice or information of any fact given to defendant or contained in the message itself indicating its importance, or that special damages would result from any neglect in its transmission, then the measure of damages would be, in case of recovery, the tolls paid by plaintiffs for its transmission, and the jury should so find.

(5.) Because the court refused to charge the jury as follows: Telegraph companies are not liable for damages in any case where the claim for the same is not presented in writing within sixty days after the sending of the message, when such stipulation or condition is embodied in the printed terms of the blank upon which the message is sent, to some agent of the company authorized to exercise any of its corporate powers in relation to the subject matter of the claim. And if the evidence does not show that plaintiffs presented their claim in writing within such time to such agent of the defendant, then plaintiffs cannot recover in this case.

JNO. S. BIGBY, for plaintiff in error.

PEABODY & BRANNON, for defendants.

SPEER, Justice.

Blanchard, Williams & Co. sued the Western Union Telegraph Company in an action of assumpsit for the sum of $189.71 as damages claimed to have been sustained in consequence of an error in the transmission of a day message from the city of Columbus to the city of New York.

The declaration alleges that on the 19th of May, 1879, the plaintiff below caused to be delivered to the defendant a message in writing as follows:

"*Waldron & Tainter, New York.*

Cover two hundred September, one hundred August.
(Signed)        BLANCHARD, WILLIAMS & CO.,"

to be sent and delivered to Waldron & Tainter, New York, and the defendant for a certain consideration agreed to do it.   That the company did not transmit the message as received, but changed it so that when delivered to Waldron & Tainter, in New York, it read as follows:

" *To Waldron & Tainter, New York.*

Cover two hundred September, two hundred August.
(Signed)                        BLANCHARD, WILLIAMS & CO."

The declaration alleged that Waldron & Tainter were at that time factors and commission merchants in New York, engaged in buying and selling cotton, and then held for plaintiffs 100 bales of cotton, to be delivered to their order in August, 1879, in New York, and that plaintiffs, desiring to sell said 100 bales, delivered said message to defendant, to be carried to New York to be delivered to said Waldron & Tainter.   Plaintiffs aver that the message was an order from them to Waldron & Tainter to sell said 100 bales of cotton on their account, to be delivered in New York in August, 1879, and would have been so understood if it had been delivered to them as written and delivered to the telegraph company.

That the message, as sent by defendant, was an order to sell 200 bales, to be delivered in New York in the month of August, and was so understood by Waldron & Tainter; and in consequence of the change of the message they sold 200 bales of cotton on account of plaintiffs, to be delivered in New York in the month of August, instead of 100 bales as directed by the message delivered by plaintiffs.   By reason of this change Blanchard, Williams & Co. were compelled to buy 100 bales to comply with the sale made by Waldron & Tainter.

That on the 20th of May, 1879, they advised Waldron & Tainter of the change in the message, and they on the 21st of May bought 100 bales of cotton to comply with said sale made; but in consequence of the fact that cotton had advanced, a loss was incurred by plaintiffs of $159.67,

and they were also put to the expense of $25.00 in selling and buying said 100 bales, and $5.00 in sending messages by telegraph to New York in connection therewith.

To this suit defendants filed the pleas,

(1.) Of the general issue.

(2.) That the plaintiffs at the time of sending said message made no request to have said message repeated, did not offer or pay to have said message repeated, but paid for it as a single message under the rules and regulations of the company, which were known to plaintiffs and assented to by them.

(3.) That the message of plaintiffs was an obscure or cipher message, and plaintiffs did not at the time of its transmission inform the defendant of the value or importance of the message. That the plaintiffs well knew of the rules and regulations of the company as to sending obscure or cipher messages, and the same was sent under said rules, etc., and defendant, under said rules, was not liable, and they were sent at risk of plaintiffs.

(4.) That plaintiffs did not communicate to defendants at the time of the transmission of said message, the special circumstances under which it was sent, nor were they known to defendant—that the message was of any value or importance.

(5.) That the contract in respect to which said message was sent was an illegal contract under the law, being a contract touching the sale of cotton futures.

Under the evidence and charge of the court the jury returned a verdict for the plaintiffs, whereupon the defendants made a motion for a new trial on various grounds as set forth in the record, which was overruled by the court and defendant excepted.

It appears from the evidence in this case that the plaintiffs below delivered to the telegraph company at Columbus (the defendant) a message to be transmitted and delivered to Waldron & Tainter, factors and commission merchants, engaged in the buying and selling of cotton

in the city of New York. That in said message, as delivered by plaintiffs to the company, the said factors were instructed to "cover two hundred September and one hundred August." But the message received by the factors was to "cover two hundred September and two hundred August."

The message as received in New York by the factors, according to universal commercial usage among cotton men, meant the plaintiffs desired their factors to sell on their account two hundred bales of cotton to be delivered in August, and two hundred bales to be delivered in September. Whereas, the message as delivered for transmission to the company at Columbus, meant for the factors to sell two hundred bales to be delivered in September and one hundred to be delivered in August on account of plaintiffs. The evidence further shows that the words used in the telegram are terms of trade in ordinary use, and having the same import universally in trade. They meant a direction to sell, and implied that the plaintiffs were long of cotton to be delivered to them at such times.

In transmitting the message it further appears that the message passed as delivered correctly over the wires from Columbus to Washington city. That at that point it was received in the words as written and delivered in Columbus, but that at Washington city the telegram was changed, the word *two* was substituted by the operator for the word *one* in the August delivery. Austin, a witness for the defendant and the telegraph operator at Washington city who transmitted the message to New York, says: "If the printed copy at New York differs from the manuscript copy handled by me at Washington, the presumption is the error was made by me, as being received upon the printing instrument at New York, it is bound to record exactly as transmitted, though I am unable to explain it, save by the operation of unconscious mental action."

It is clear then, the error was not the result of any

"atmospheric agency," but inattention and negligence in the operator at Washington, which he, in mild terms, calls " the operation of unconscious mental action." And it is against the operation of this unconscious mental action, that the law gives redress when loss results therefrom.

That the damage claimed resulted to the plaintiffs by reason of this error is fully sustained by the proof, and not controverted ; though plaintiffs diligently sought by telegrams to rectify the error and guard against its consequences as soon as discovered, but without avail.

The fact of negligence against the company and loss to the plaintiffs being thus established by the evidence, was the law of the case correctly submitted to the jury by the court, or were the defences set up by the defendant under the rules and regulations established by the company in the transmission of messages, such as would, under the law and evidence, protect them from liability?

1, 2, 3. In the case of the *Western Union Telegraph Company vs. Fontaine*, 58 *Ga.*, 433, this court held: "Where a message is delivered to a telegraph company, it occupies the legal status of a bailee for hire, and not that of a common carrier, and if such message be not sent as directed, such company is liable for the damages resulting therefrom, unless it shows that the diligence necessary and appropriate to that peculiar business has been exercised." It was also held that, "An agreement that the company shall not be liable for errors or delays in the transmission or delivery or for non-delivery of such messages, from whatever cause occurring, shall not relieve it from liability from the damages resulting from its failure to transmit a message by reason of its own gross negligence. Such a contract the law does not recognize."

Chief Justice Warner, in pronouncing the opinion of the court, said : " When a person either natural or artificial undertakes any employment, trust or duty, such person contracts with those who employ or entrust him or it to

perform the employment, trust or duty with that integrity, diligence and skill which belongs or appertains to that particular employment, and if by the want of either of these qualities any injury occurs to those who employ him or it for reward, an action on the case may be maintained therefor." He places the liability of the company on the ground that he is a bailee for hire, and though they are not insurers against loss or damage to the thing bailed, they are required to exercise care and diligence in protecting or keeping safely the thing bailed."

Here the plaintiffs proved that the message that he entrusted to be transmitted and delivered was not in fact delivered, but an altered and changed message which resulted in loss to the plaintiffs ; and after such proof under the law, "the burthen was on the bailee to show proper diligence." Code, §2064.. And when he undertook to do this, its own agent, employé and witness shows the error was his own and the result " of the operation of unconscious mental action."

In the same case, Judge Bleckley, while not concurring that the liability of the company was that of a bailee for hire, still held that the company could not stipulate against liability for its own *gross negligence*. " In no business carried on for reward can that be done."

Judge Jackson concurring, " was inclined to think that the business of a telegraph company is very similar to that of a common carrier," and approximates very nearly to that business, and his reasoning upon the proposition is cogent and difficult to answer, if not conclusive.

In looking into the charge of the court, he clearly has submitted the rule of liability as thus recognized and established by this court, and we think the charge was pertinent, clear and applicable to the facts of the case.

It is insisted, however, by way of defence that, as the plaintiffs made no request or payment to have the message sent " repeated," and as under the evidence and rules of the company absolute accuracy in the transmission of mes-

sages can only be secured by " repeating " them, the plaintiffs were notified by the printed rules of this necessity, and hence defendants are not liable, since they did not repeat the message.   We can only say, that any rule or regulation of the company which seeks to relieve it from performing its duty belonging to the employment with integrity, skill and diligence, contravenes public policy as well as the law, and under it the party at fault cannot seek refuge. If it become necessary for the company in transmitting messages with integrity, skill and diligence, to secure accuracy, to have said messages repeated, then the law devolves upon them that duty, to meet its requirements. We know of no law in this state that limits their tolls on messages ; this is under their own control.   A message must be transmitted with integrity, skill and diligence, and the mode of attaining accuracy in such work they have at their command,—the compensation paid therefor the law does not seek to limit or restrict.   28 *Ga.*, 543 ; 58 *Ib.*, 433 ; 34 *Ib*, 215 ; 1 Daly Tel. Cases, 288 ; 29 Maryland, 222 ; 27 Iowa, 432 ; 60 Maine, 530.

In the case in 27 Iowa, 432, the court on full review of the authorities, held " that a telegraph company cannot by any rule or regulation it may make, relieve itself from mistakes caused by the want of ordinary care.   Hence, they would be liable for ordinary as well as gross neglect." In the request to charge made by plaintiff in error, the refusal of which is complained of in the first and second grounds of the motion, the charge asked for, by implication at least, seeks a protection for the company under its rules and regulations, which is not sanctioned by law.

Neither do we think the company, by any rule or regulation of its own, can protect itself against every degree of negligence, except " gross negligence or fraud," as is claimed in the written request to charge, and assigned as error for the refusal thereof, in the third ground of the motion.   Nor is the effort to fix by rule or regulation the amount of damages the company may be liable for in

310 SUPREME COURT OF GEORGIA.

The Western Union Telegraph Company vs. Blanchard, Williams & Co.

harmony with the law, where liability is incurred. 60 Maine, 530. To say the company shall only be liable for the amount of tolls paid out, is practically to excuse them altogether.

4. In the refusal to charge, as asked for in the sixth ground of the motion, "as to plaintiffs presenting their claim for damages within sixty days to some agent of the company authorized to exercise its corporate powers in relation to the subject matter of the claim," it appears that the defendant is a foreign corporation, and we think a presentation of this claim for damages within sixty days, as shown by the evidence, to the resident agents of the defendant at Columbus, who made this contract and transmitted the message, is sufficient compliance with the law and rule, and that was all that was required.

5. As to the fifth ground in the request to charge, we do not see but what the message sought to be transmitted was, according to the proof, an ordinary commercial message, intelligible to those engaged in cotton dealing; and we can see no such special purpose intended by the sender, which was unknown to the company, as to vary the rule of liability. There was at least enough known to show it was a commercial message of value attached to the message, and that is sufficient. 55 Penn. State Rep., 262; Tel. Cases, 256; 1 Daly, 474; 44 N. Y., 263; Tel. Cases, 570; 41 N. Y., 544; 45 *Ib.*, 744; 44 *Ib.*, 263; Tel. Cases, 613. Moreover the same obscure word "cover" here used seems to have been known to defendant in the case in 58 *Ga.*, 433, against the same company, when no such defence was then set up as to its being obscure.

6. The seventh and eighth grounds of the motion, complained of the refusal of the court to charge, "that if this was a sale of cotton by Waldron & Tainter, for plaintiffs, to be delivered at a future day, then it was a speculation in chances, the contract was illegal, and no recovery can be had;" and on the other hand, charging

that "though this might be so, the defendant in this case could take nothing by it, that they were bound by their contract with plaintiff without reference to it."

Granting the contract of selling futures in cotton is contrary to our law, if the same was to be here performed, still the agents in New York who bought and sold the cotton, (and presumably were bound for it) could recover of the plaintiffs the amount of the loss for them they had paid. If so, on the plaintiffs paying this loss, they have sustained a legal injury, and the telegraph company who caused the injury are liable for it. The sending of the message was a legal act. Plaintiffs were bound to pay in law the toll on the same, and if so, when the company takes its benefits, why may it not be held liable for negligence in the performance of it? 48 *Ga.*, 102 ; 45 *Ib.*, 501.

In looking through the other grounds of the motion, we see no such error as, in our opinion, calls for a reversal of the judgment.

Judgment affirmed.