## WESTERN UNION TELEGRAPH COMPANY V. SHORT.

Decided October 18, 1890.

1. *Telegraph companies—Liability.*

Telegraph companies are not insurers of accuracy in the transmission of messages, but are bound to use ordinary care and diligence.

2. *Negligence—Stipulation against liability.*

A telegraph company cannot stipulate for immunity from liability for negligence in transmitting an unrepeated message.

3. *Mistake in telegram—Burden of proof.*

The failure of a telegraph company to correctly transmit a message is *prima facie* evidence of negligence.

4. *Measure of damages.*

For a failure to correctly transmit a message, a telegraph company is liable for such damages only as arise naturally from the breach of contract, or such as may reasonably be supposed to have been contemplated by both parties, when the contract was made, as the probable result of a breach of it.

Thus, where plaintiff received a telegram which apprised him that a cause pending in Texas was set for a certain day, it was sufficient to indicate that he would probably be induced thereby to attend the trial; and if, through the company's negligence, the message was incorrectly transmitted, and plaintiff was induced to make an unnecessary journey, his damages will be measured by the expenses of the trip and the value of the time lost, and will not include compensation for the stoppage of a saw mill or loss of services of servants and teams occasioned by his absence.

APPEAL from *Hempstead* Circuit Court.

W. E. ATKINSON, Special Judge.

*U. M. & G. B. Rose* and *Smoote & McRae* for appellant.

1. It was error to hold that the stipulation in regard to repeating messages was contrary to public policy and void. The distinction between the liability of common carriers and other bailees is well stated in 13 Allen, 232. See also Gray on Com. by Tel., sec. 6; 48 N. Y., 132; 113 Mass., 301;

Allen, Tel. Cas., 5; 41 N. Y. (2 Hand), 576; 15 Mich., 525.

The stipulation against liability for errors in unrepeated ·messages is valid, and where the evidence shows a mere error in transmission, with nothing to indicate fraud, intentional wrong or gross negligence, no recovery can be had. 84 Eng. C. L. R., 3; 13 Allen, 235; 112 Mass., 73; 113 Mass., 301; 137 Mass., 463; 45 Barb., 274; 48 N. Y., 132; 45 N. Y., 751; 1 Metc. (Ky.), 164; 29 Md., 232; 15 Mich., 525; 37 Mo., 472; 27 Iowa, 433; 1 Am. Rep., 285; 13 A. & E. Corp. Cas., 585; 78 Pa. St., 238; 5 S. C., 377; 19 S. C., 84; 11 Neb., 87; 89 N. C., 334; 66 Cal., 579; 52 Tex., 283; 18 Hun, 157; 18 Fed. Rep., .717; 14 Fed. Rep., 710; Allen, Tel. Cas., 690.

These cases establish: 1, that a stipulation limiting lia-·bility in cases of unrepeated messages is valid; and 2, that the mere existence of an error on the face of a telegram delivered does not cast upon the company the burden of expla-·nation.

2. The rule of damages was erroneous. Only such as in contemplation of the parties are reasonably incident to the breach can be recovered. 9 Exch., 354; 48 Ark., 509; 45 N. Y., 751; 54 Barb., 505; 29 Md., 232; Allen's Tel. Cas., 390; 8 Biss., 131. Where the face of the dispatch does ·not indicate that the sender is liable to sustain loss if the dis-·patch is not promptly forwarded, or a mistake made in transmission, and the company is not so informed, it is liable for nominal damages only. Cases *supra*, and Allen's Tel. Cas., 5; 61 Tex., 452; 8 A. & E. Corp. Cas., 123; 30 Ohio St., 555; 34 Wis., 471; 16 Nev., 223; 32 Barb., 530. Speculative damages cannot be recovered. 58 Tex., 395; Allen's Tel. Cas., 61; 32 Barb., 530.

*R. B. Williams* for appellee.

Cites 37 Ohio St., 301; 60 Ill., 421; 74 Ill., 168; 68

Ga., 299; Allen's Tel. Cas., 471; 58 Tex., 170; 62 Me.,
209; 60 Me., 9; 33 Wis., 558; 34 Wis., 471; 58 Ga.,
433; 57 Tex., 283; 14 Am. Rep., 38; 45 Am. Rep., 480;
44 Am. Rep., 610, 589.

BATTLE, J.   On the 24th day of July, 1886, the Western
Union Telegraph Company was engaged in the business of
operating a telegraphic line between Bonham, Texas, and
Hope, Arkansas.   Prior to that day C. T. Short was recog-
nized to appear as a witness in a case pending in court at
Bonham, and known as Seaton's case.   Desiring to be pres-
ent when called as a witness, he wrote to Lusk & Thurman,
attorneys at Bonham, to notify him of the day upon which
the case was set for trial.   Not hearing from them by mail,
he requested them to notify him by telegram.   On the 24th
of July, 1886, Lusk & Thurman delivered at Bonham, to the
Western Union Telegraph Company, a message notifying him
that the case was set for August 17th.   It was delivered
written upon one of the printed forms of the Western Union
Telegraph Company.   A portion of the form and the mes-
sage as it was written in the form are as follows:   "All mes-
sages taken by this company are subject to the following
terms:   To guard against mistakes, or delays, the sender of
a message should order it repeated; that is, telegraphed back
to the originating office for comparison.   For this, one-half
the regular rate is charged in addition.   It is agreed between
the sender of the following message and this company, that
said company shall not be liable for mistakes or delays in the
transmission or delivery, or for non-delivery, of any unre-
peated message, whether happening by negligence of its ser-
vants or otherwise, beyond the amount received for sending
the same; nor for mistakes or delays in the transmission or
delivery, or for the non-delivery of any repeated message be-
yond fifty times the sum received for sending the same, unless
specially insured; nor in any case of delays arising from un-

avoidable interruption in the working of its lines, or for errors in cipher or obscure messages; and this company is hereby made the agent of the sender without liability to forward any message over the lines of any other company when necessary to reach its destination.     *     *     *     *     *     *

"Send the following message subject to the above terms which are hereby agreed to:

BONHAM, TEXAS, July 24, 1886.

*To C. T. Short, Nashville, Ark.*

Seaton's case is set for Saturday, August the seventeenth.

LUSK & THURMAN."

The telegram as delivered was intended to notify Short, and so specified upon its face as delivered to the company at Bonham, that Seaton's case was set for the 17th of August. A telegram was transmitted and delivered to Short by the company at Nashville, Arkansas, upon a form the same as that upon which the message was written. The message received differed from the one delivered at Bonham in this: The one received by Short specified the seventh of August as the day upon which Seaton's case was set for trial, and the one delivered to the company specified the 17th of August. Short did not have the telegram repeated; but acting upon it as he received it went to Bonham, in obedience, as he supposed, to his recognizance, and reached there on the 6th of August, and found that Seaton's case had in fact been set for the 17th of August, as specified in the message delivered to the company by Lusk & Thurman.

Short sued the Western Union Telegraph Company for $422.35, the amount of the damages he alleged he suffered on account of the failure of the defendant to send the message as it was delivered to it. In the course of the trial of his action, an agreed statement of the foregoing facts was read in evidence, and he testified, over the objections of the defendant, as follows: "It took me six days to go to Bonham

and return.   At this time (when the message was received)· I was running a saw mill near Nashville, Ark., and superintending the business of the mill.   In going to Texas as a witness in response to said telegram as delivered to me, it became necessary for me to stop my mill operations as there was no one else to manage it for me.   The value of my time during the six days that I was absent was fifty dollars.   My railroad fare to Bonham, Texas, and return was $13.35. My hotel bills on this trip were $9.00.   And during that time my teams for hauling stock and lumber were idle, and their services, if I had been at home, would have been worth $75.00, and it cost me during that time $25.00 to feed them, and I lost the services of a valuable man by which I was damaged in the sum of fifty dollars ($50.00).   At the time, my mill was cutting upon an average 15,000 feet of lumber per day, at a cost of $4.75 per thousand, which I was selling at $8.50 per thousand, and had more orders and contracts to furnish lumber than I could fill, and by reason of the stoppage of my mill during the six days of my absence, as above stated, I lost the profits I would have made in cutting lumber during that time, which I estimate at the sum of two hundred dollars.''

The result of the trial was a verdict and judgment in favor of the plaintiff against the defendant for the sum of $422.35.   The defendant saved exceptions and appealed.

The court below held that the stipulation in the printed form upon which the message in question was delivered, as to the liability of the appellant for mistakes or delays in the transmission or delivery, or for the non-delivery, of unrepeated messages, was contrary to public policy and void, and so instructed the jury.   Was this error?

1. Telegraph companies—Liability.        Common carriers of goods and telegraph companies are not subject to the same rule of responsibility.   The common carrier is held to the strictest accountability for the safe transportation and delivery of property entrusted to him for

safe carriage. In the absence of a contract or regulation limiting his liability he is treated as an insurer against all losses not caused by the act of God or the public enemy. On the other hand, in the absence of a contract or regulation fixing the liability of telegraph companies, they are not held responsible as insurers of absolute safety and accuracy in the transmission of messages as against all contingencies, but, holding themselves out to the public ready to transmit all messages delivered to them, they are bound to furnish suitable instruments and competent servants, and to use ordinary care and diligence in transmitting messages, and for any failure to use such care and diligence they are responsible to those sustaining loss or damage thereby. They are, however, not liable for the want of any skill or knowledge not reasonably attainable in the present state of telegraphy, "nor for errors resulting from the peculiar and unknown condition of the atmosphere, or any agency from whatever source, which the degree of skill and care spoken of is insufficient to guard against or avoid." *Little Rock & Fort Smith Telegraph Co. v. Davis*, 41 Ark., 79; *Fowler v. Western Union Telegraph Co.*, 80 Me., 381; S. C., 6 Am. State Rep., 211; 2 Shearman & Redfield on Negligence (4th ed.), secs. 537, 539, and cases cited.

Telegraph companies are public agents, and exercise a public employment. They are chartered for public purposes, and are vested with the power of eminent domain, which they cannot lawfully exercise if they are not public agents. By virtue of their public employment it is their duty, for a reasonable consideration, to receive and transmit all messages over their wires with that integrity, skill and diligence which appertain to their business. "They are a commercial necessity. Business cannot be transacted without them only at a great disadvantage. In most places there is no choice as to lines, and where there is, it is so limited that a virtual monopoly exists. On the other hand, the occasion for sending

2. Negligence
—Stipulation
against liability.

a message often comes suddenly, or with so short a notice,'' as to compel the sending of the message by telegraph without delay, or the sufferance of pecuniary loss by the failure to do so. · Often the customer cannot afford to wait, and must submit to the terms of the telegraph company. They do not stand upon an equality. The public is compelled to accept the services of the telegraph company, and to rely upon it discharging its duty. In this and other respects the employments of the telegraph company and the common carrier of goods are strongly analogous. The business in which each are engaged are almost equally important to the public: vast interests are committed to each, and good faith and diligence in the discharge of the duties of each are essential to the interest of the public. In both cases the demands of a sound public policy alike forbid any stipulations to relieve them of the duty to use the care and diligence resting upon them. To hold otherwise would be to give license and immunity to carelessness and negligence on the part of each, and would be disastrous to the interests of the public. *Smith v. Western Union Telegraph ·Co.*, 8 Am. & Eng. C. C., 15; *W. U. Tel. Co. v. Blanchard et al.*, 68 Ga., 299; *Sweatland v. Ill. & Miss. Tel. Co.*, 27 Iowa, 433; *Harkness v. W. U. Tel. Co.*, 73 Iowa, 190; *Bartlett v. W. U. Tel. Co.*, 62 Me., 209; *Express Co. v. Caldwell*, 21 Wall., 269; *W. U. Tel. Co. v. Meredith*, 95 Ind., 93; *W. U. Tel. Co. v. Tyler*, 74 Ill., 168; *Tyler et al., v. W. U. Tel. Co.*, 60 Ill., 421; *Candee v. W. U. Tel. Co.*, 34 Wis., 471; *Thompson v. W. U. Tel. Co.*, 64 Wis., 531; Gray on Communications by Telegraph, secs. 46-52; 2 Redfield on Railways (6th ed.), p. 342, sec. 12; p. 345, sec. 16; p. 346, sec. 17; 2 Shearman and Redfield on Negligence (4th ed.), sec. 553; 8 Am. & Eng. C. C., p. 44, note and cases cited; 14 Fed. Rep., 720 and cases cited; 2 Thompson on Negligence, p. 841; sec. 6, p. 843.

In this case the agreement between the sender of the mes-

sage and the company was, that the company should not be liable for mistakes or delays in the transmission or delivery, or for non-delivery of the message sent, unless it was repeated, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same.    By this stipulation the company clearly undertakes to relieve itself of all liability for negligence, the message not having been repeated, and is contrary to public policy and void.    It is true that many authorities have held that such an agreement is "binding upon all who assent to it, so as to exempt the company from liability beyond the amount stipulated, for any cause except for willful misconduct or gross negligence on the part of the company."    One of the reasons assigned by these authorities for so holding is, "the risks and uncertainties attendant on the transmission of messages by reason of electricity, and the difficulties in the way of guarding against errors and delays in the performance of such a service, and the very extensive liability to damages which may be incurred by a failure to deliver a message accurately."    But it seems to us that this is not a sufficient reason why such stipulations should be sustained.    The telegraph company is only bound to use ordinary care and diligence in transmitting messages, and is not responsible for any errors or failures which such care and diligence are insufficient to guard against or avoid.

The same authorities further hold that the regulation or agreement that the message must be repeated in order to hold the company liable for negligence beyond the amount received for sending the message is a reasonable precaution taken by the company and binding on all who assent to it. They say: "The repetition of a message may be unimportant. A mistake in its transmission might occasion no serious damage or inconvenience to the parties interested.    Whether it would do so or not would be within the knowledge of the sender or receiver, rather than within that of the operator who transmitted it.    The latter could rarely be expected to

know what would be the consequences of an error in its trans-
mission.   It is therefore a most reasonable requisition that it
should be left to those who know the occasion and the sub-
ject of the message, and who can best judge of the conse-
quences attendant upon any mistake in sending it, to deter-
mine whether it is of a nature to render a repetition necessary
to ascertain its accuracy, instead of throwing this burden on
the owner or conductor of the telegraph, who cannot be sup-
posed to know the effect of a mistake, or the consequences
in damages of a failure to transmit it correctly.''   This may
be true, but we think the failure to repeat should not relieve
the company of the duty to use due care and diligence in
transmitting the message without repetition, and of liability
for losses incurred by reason of the failure to do so.   The
fact that the company could not from an inspection of the
message know its importance and foresee the consequences of
a failure to send it correctly, or had no notice of the special
circumstances under which it was sent, is a matter that ought
to affect only the amount of damages for which the company
should be held liable.

3. Mistake in
telegram—Bur-
den of proof.        The court below in effect held and instructed the jury,
that the failure to transmit and deliver the message in the
form or language in which it was received was *prima facie*
evidence of negligence for which the company is liable.   It
is urged that this was error.   But we do not think so.   If the
failure was not the result of negligence the means of showing
that fact is, almost invariably in all cases, within the exclu-
sive possession of the company.   To require the sender to
prove negligence after showing the mistake ''would be to re-
quire in many cases an impossibility, not infrequently result-
ing in enabling the company to evade a just liability.''   *W*,
*U. Tel. Co. v. Crall*, 5 Am. St. Rep., 795 ;  S. C., 38 Kan.,
679 ;  *Bartlett v. W. U. Tel. Co.*, 62 Me., 209 ;  S. C., 16
Am. Rep., 437 ;  *Telegraph Co. v. Griswold*, 37 Ohio St.,
301 ;  S. C., 41 Am. Rep., 500 ;  *Candee v. W. U. Tel. Co.*,

34 Wis., 471; *Tyler v. W. U. Tel. Co.*, 60 Ill., 421; *W. U. Tel. Co. v. Carew*, 15 Mich., 533; *W. U. Tel. Co. v. Tyler*, 74 Ill., 168; *Olympe DeLaGrange v. S. W. Tel. Co.*, 25 La. An., 383; *W. U. Tel. Co. v. Fontaine*, 58 Ga., 433; *W. U. Tel. Co. v. Blanchard et al.*, 68 Ga., 308; Shearman & Redfield on Negligence (4th ed.), secs. 542, 556; 2 Thompson on Negligence, p. 841, sec. 6, and p. 843; Gray on Communications by Telegraph, secs. 53, 54.

The court below erred as to the measure of damages in this case.    The general rule is, damages recoverable for breach of contract "are only those which are incidental to and directly caused by the breach, and may reasonably be presumed to have entered into the contemplation of the parties, and not speculative profits or accidental or consequential losses."    In *Hadley v. Baxendale*, 9 Exch., 354, the rule is correctly laid down as follows:    "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i. e.*, according to the usual course of things, from such breach of contract itself; *or such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract, as the probable result of a breach of it*.    Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants and thus known to both parties, the damages resulting from the breach of such a contract which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated.    But on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not

<span style="font-size:smaller">4. Measure of damages.</span>

affected by any special circumstances, from such a breach of contract." *Leonard v. The New York Tel. Co.*, 41 N. Y., 544; *U. S. Tel. Co. v. Gildersleve*, 29 Md., 232; *First National Bank of Barnesville v. Telegraph Co.*, 30 Ohio St., 555; S. C., 27 Am. Rep., 485; *Railway Co. v. Mudford*, 48 Ark., 502; 3 Sutherland on Damages, 298–307 and cases cited; Gray on Communications by Telegraph, secs. 82–96 and authorities cited.

In this case the message indicated that a certain case pending in a court at Bonham was set for hearing or trial on a certain day. The fact that it was sent by telegraph was sufficient to indicate that it was important that Short should know at once the fact intended to be communicated by it. There was enough in it to indicate that Short would probably be induced thereby to go to Bonham to attend the trial of the Seaton case on the day specified therein. This was enough to entitle Short to recover damages. Gray on Communications by Telegraph, sec. 96 and authorities cited. The damages recoverable, according to the evidence, were the reasonable expenses incurred by Short in going to Bonham and returning, and the value of his time lost in so doing.

There was no evidence that the telegraph company had notice of any special circumstances connected with the sending of the message. The message contained all the information the company had. All the evidence about the stopping of a mill, idleness of teams, value of their services, and cost of feeding them, the loss of the services of a valuable man, and loss sustained by reason of the stoppage of the mill were clearly inadmissible.

The loss sustained on account of expenses of trip to Bonham and return was $22.50, and the value of the time lost in the making it was $50.00, making his damage, recoverable according to the evidence, $72.35. The verdict should have been for that amount.

If appellee shall enter a remittitur here of $350.00, the

difference between $422.35 and $72.35, within the next fifteen days, according to the rules of this court, the judgment of the court below will be affirmed; otherwise it will be reversed, and the cause remanded for a new trial.