57   257
77   585

BUNCH *v.* POTTS.

Opinion delivered February 4, 1893.

1. *Nominal damages—Error.*
   Failure to recover nominal damages will not entitle a plaintiff to a reversal of an adverse judgment.

2. *Sale—Non-delivery—General damages.*
   In the absence of any special damage, the general damage a vendee is entitled to recover for non-delivery of goods sold is the difference between the contract price and the market value of the goods at the time when and the place where they should have been delivered, with interest.

3. *Right of vendee to weigh goods before payment.*
   A vendee of a car-load of goods sold by weight is not justified in refusing to accept them because he was not permitted to unload and weigh before paying for them if the contract did not give him that right.

4. *Delay in making shipment—Special damage.*
   In an action for damages occasioned by delay in shipping goods where the vendee claimed special damage for loss of profits he would have made by carrying out sub-contracts for re-sale of the goods, a finding that he was not entitled to damage on that score will not be set aside where it is not clear what profits were lost on the sub-contracts by the delay; where, notwithstanding the delay, the vendee agreed to receive the goods at the contract price, without claiming damage for delay; where it appears that the vendee could have obtained a substitute for the goods in time to have fulfilled his sub-contracts, and at a price that would not have reduced his profits; and where, at the time the principal contract was entered into, the vendors had no notice of such sub-contracts.

5. *Contract of sale—Rescission.*
   A vendee of goods in the hands of a carrier, after agreeing to receive them notwithstanding delay in their shipment, subsequently sued the vendors for damages caused by the delay, and

caused the goods to be attached as the property of the vendors. Thereupon the vendors directed their agent to sell the goods to a third person. *Held*, the parties will be deemed to have rescinded the contract of sale, and the vendee cannot be held for their purchase price.

6. *Justice of the peace—Jurisdiction of counter-claim.*

In an action before a justice of the peace for damages for breach of a contract, defendant cannot interpose a counter-claim for breach of the same contract for an amount in excess of the justice's constitutional jurisdiction.

Appeal from Pulaski Circuit Court.

ROBERT J. LEA, Judge.

On March 4, 1890, T. H. Bunch, a commission merchant at Little Rock, Ark., sued Potts Bros., of St. Paul, Minn., before a justice of the peace to recover for a loss caused by defendants' failure to comply with their contract to deliver two car-loads of potatoes; and alleged his damages to be $150. He caused an attachment to be levied on the potatoes in the hands of the railway company as the property of defendants. At the trial defendants made a counterclaim for the purchase price of 1200 bushels of potatoes at thirty cents per bushel, making a total of $360. Judgment was rendered in the justice's court dismissing the attachment, and plaintiff appealed to the circuit court. In the latter court the cause was tried before the judge without a jury.

The correspondence between the parties, submitted in evidence by plaintiff, show that, on January 23, 1890, plaintiff wired defendants as follows: "Enter us for two cars Fancy Rose potatoes at price named (which was thirty cents), F. O. B." On the same day defendants wrote to plaintiff: "Your telegram ordering two cars of Rose potatoes received, and for same accept our thanks. As soon as the weather will permit, will get them out and ship them to you, but at present the weather is severely cold here—twenty-five to thirty degrees below zero—much too cold to move potatoes." On

February 15, plaintiff wrote to defendants as follows : " We wired you last night to please advise us when the potatoes were shipped, and how much there was in the car. We are very anxious to get the potatoes, as we have sold them for seed." On the same day defendants wired plaintiff that the potatoes would be shipped on the following Monday. On February 19, plaintiff wrote to defendants : " We received your telegram of the 15th saying that the potatoes would be shipped on Monday. We also received your letter under date of the 7th, saying that you were loading potatoes and that they would go forward at once. You have placed us in a very bad attitude with our friends in regard to potatoes. It strikes us that it would be just as easy to tell the truth in regard to shipping the potatoes as to be continually giving us some foolish excuse. The potatoes are for seed, and should they get here too late to be planted, you will have to stand the consequence."

On February 21, defendants wrote apprising plaintiff that the potatoes had been shipped, and inclosed the invoices, and added : " We made sight draft on you for $344.17 with bill of lading attached. You will kindly accept our draft, and should there be any difference (but how there could be any, we cannot understand), it can be made right easily." On February 22, defendants wrote to plaintiff : " Your very impressive note of the 19th received to-day, and we can hardly blame you for being dissatisfied on account of not receiving your potatoes. The delay could not be assigned to any neglect of ours; therefore do not think we wrote you foolish excuses, but did the very best we could. In the first place, we expected refrigerators, and after waiting were disappointed. We then ordered box cars, and were loading the potatoes when the weather turned cold, and had to discontinue. We then lined the cars, and it turned so cold that it delayed us for a few days again; and, lastly, we got

cars all lined, put stoves in and waited a few days for fine weather, which moderately came, and we forwarded you two cars, which we wired you last night and billed yesterday evening."

On February 25, plaintiff wrote to defendants :

"Replying to your favor of the 21st, inclosing invoices of two cars of potatoes, will say that we would be pleased if you would make us out corrected invoices for the two cars of potatoes, making price 30 cents, F. O. B. as per our contract with you. We bought the potatoes at 30 cents, F. O. B., and not at 53 cents delivered. We ordered the First National Bank here to return your draft. You can draw for the correct amount through the Exchange National Bank of this city, and your draft will be honored promptly. Sorry that this trouble has occurred, but it is not our fault in the least."

On February 28, defendants wired plaintiff as follows : "Exchange Bank will have bills of lading tomorrow. Get them." On March 3, the cashier of Exchange Bank wired defendants as follows : "Bunch refuses to pay until potatoes are unloaded. Shall I deliver bill of lading?" On same day defendants wired their agent, Walker, to take charge of the potatoes and sell them. On March 4, this suit was brought, and the two carloads of potatoes attached.

Plaintiff testified that the shipment of the potatoes was delayed until it became too late to use or sell them for the purpose wanted ; that he could not fill the same order in the market in Little Rock, where he was engaged in business, and to which place the potatoes were to be shipped ; that he had made contracts with different parties in Little Rock, on the faith of the arrival of the potatoes on time to be sold for seed ; that he lost from 25 cents to 50 cents per barrel on the potatoes, in consequence of their non-delivery within the time, and that they would aggregate six hundred barrels ; that the

defendants kept putting off the shipment of the potatoes unnecessarily; that other houses shipped potatoes from the same neighborhood at that season in heated cars and otherwise ; that he would have honored defendant's draft, as indicated in his letter of February 25, 1890, if he had not, after writing that letter, heard that the weights or quantity of their shipments were short, and when, upon the arrival of the potatoes, they were consigned in such a way that he could have no recourse upon defendants unless he sued them at St. Paul, he declined to receive them upon condition of paying said draft, notwithstanding the letter of February 25, 1890, and he attached them for his claim herein, which is a loss of 29 cents per barrel on 600 bushels of potatoes.

On cross-examination he said that there was nothing in the contract authorizing him to unload the potatoes before paying for them.

H. K. Cochran testified that he sold the potatoes, which were attached, under the orders of the court, and that they were short two hundred and sixty bushels from what was charged by Potts Bros., but that he did not himself weigh or measure the potatoes.

W. H. Potts, one of the defendants, testified that the potatoes were shipped as soon as the weather would permit, and cars could be obtained for that purpose at St. Paul ; that there was due defendants the sum of $360 for the two car-loads of potatoes, that is, the sum of thirty cents per bushel for twelve hundred bushels.

The cause was tried by the court sitting as a jury, and the following findings of fact were made, viz :

"1.　That certain potatoes were ordered by Bunch from Potts Bros., and that they were not shipped promptly. The court finds that said Potts Bros. were entitled to a reasonable time to ship the potatoes, having due regard to the weather and the chance of getting suitable cars for safely shipping the potatoes.

"2. The court further finds that the delay in the shipment was waived by Bunch in not refusing the potatoes, and in having the terms of payment changed after the potatoes were shipped.

"3. That, at the time the attachment was levied, the potatoes were the property of Bunch, and the defendants were not entitled to any damages on the attachment.

"4. The court finds that the defendants sold and delivered to the plaintiff 1200 bushels of potatoes at thirty cents a bushel, and are entitled to recover of the plaintiff the sum of three hundred and sixty dollars and cost."

Thereupon the court adjudged "that the plaintiff take nothing by his complaint herein, and that his attachment be discharged at his costs ; that the defendants have and recover from the plaintiff the sum of $360 for their debt and damages on their counterclaim, together with their costs."

Plaintiff has prosecuted this appeal, and insists that the trial court erred in its findings, and that the judgment was excessive.

*Morris M. Cohn* for appellant.

Time was of the essence of this contract. Benjamin, Sales, Corbin's ed. vol. 2, p. 892, note. Where the contract specifies no time, a reasonable time is allowed for delivery, depending on the circumstances of the case. Benjamin, Sales, vol. 2, sec. 1023, and note 11 ; 3 M. & W. 445. If the delivery is of a less quantity than that sold, it may be refused by the purchaser. Benjamin, Sales, vol. 2, sec. 1032, and note 18 ; also sec. 535. And the buyer may recover damages for such failure. *Id.* sec. 1032, note 18. Bunch had the right to inspect the potatoes before receiving them. Benjamin, Sales, sec. 1042, and note 25. And had a right to receive them for this purpose. *Id.* sec. 1051. And reject them after-

wards. *Ibid.* The mere difficulty of shipping the potatoes, on account of weather, if an existing factor (which is not proved here), would not excuse. 25 Conn. 530; 2 Wall. 1, 7. The measure of damages, the article of potatoes in the quantity named not being procurable at Little Rock, was certainly the profit he had lost, if not also the loss his customers sustained; although Bunch does not claim the latter. Sutherland, Damages (Ed. 1882), vol. 1, 75, 81, 91; Benjamin, Sales, secs. 1336, 1337, 1338; 47 Ark. 519, 527; 48 Ark. 502. In any event Bunch was entitled to recover the market price at time and place of delivery, as compared with the time the potatoes would have been delivered, and this was twenty-five cents per barrel. Benjamin, Sales, vol. 2, p. 1121, note. The damages Bunch sustained, even had he received and accepted the potatoes, would still be a legitimate matter of recovery against the defendants, after they entered their appearance in the cause by answering and trying the cause; and this would be the loss in value and quantity as shown by the testimony. 53 Ark. 155, 159; 12 *id.* 699.

*Rose & Compton* for appellees.

Even if Bunch had the right to cancel the contract on account of the delay, he failed to do so, and this was a waiver. Whart. Cont. sec. 891.

MANSFIELD, J. The claim of the plaintiff, Bunch, was for damages alleged to have been sustained through the failure of the defendants, Potts Bros., to ship the potatoes within the time contemplated by the contract. The promise of the defendants was to ship as soon as the weather would permit them to do so without exposing the potatoes to the danger of freezing; and it is not entirely clear from the record that the trial court has found that there was any avoidable delay in making the shipment. But construing the conclusions of fact stated in

1. Error as to nominal damages.

the bill of exceptions to embrace a finding that there was such delay, only nominal damages were recoverable for it if no actual damage was suffered; and the failure to recover damages merely nominal can not entitle the plaintiff to a reversal of the judgment. *Buckner* v. *Railway*, 53 Ark. 18; *Glasscock* v. *Rosengrant*, 55 Ark. 376.

2. Damage for breach of contract of sale.

In the absence of any special damage, the general damage a vendee is entitled to recover for the non-delivery of goods is the difference between the contract price and the market value of the goods at the time and place of delivery, with interest. Under this rule, if the market value of the potatoes was not above the contract price on the day they would have reached Little Rock, if shipped at the proper time, the plaintiff sustained no loss for which he can maintain an action. 2 Sedg. Dam. secs. 733, 734. But

3. Right of vendee to weigh before payment.

if they were worth more than the stipulated price on the day they should have been delivered, there was no evidence that warranted the court in finding that their value had diminished in the short time that intervened before the day on which the defendant offered to deliver them; and the law will not allow the plaintiff to recover for a loss he could have avoided by accepting them. 2 Sedg. Dam. sec. 741. It is said, however, that he was justified in refusing the potatoes by the fact that he was not permitted to unload them before paying the amount of the invoice; and also by the additional fact that it was afterwards ascertained that a shortage existed in the quantity charged for. But he had no right under the contract to have the cars unloaded before making payment; and the fourth finding of the court is against the contention that any shortage existed.

4. Special damage caused by delay in shipment.

The only attempt to prove a special damage was made by Bunch's own testimony. He stated that he had contracts with parties in Little Rock, where he was engaged in business, for the re-sale of the potatoes, and that he lost in profits from 25 to 50 cents per barrel in conse-

quence of the non-delivery of the potatoes before it was too late to sell them, as he had expected to be able to do, for use as seed. The indefinite nature of this statement as to the plaintiff's loss per barrel indicates that he had no contracts to re-sell the potatoes at any fixed price. And his conditional offer to receive them at the contract price after they reached Little Rock, without objection as to the time they were tendered, was a circumstance tending to show that he was not injured by the defendant's default in not forwarding them at an earlier day. *Weed* v. *Dyer*, 53 Ark. 160; Benj. on Sales, sec. 900. A fact of like tendency is found in his letter of February 19th, the tenor of which manifests the intention to receive the potatoes if shipped without further delay. It is an inference, too, that may be fairly drawn from other facts of which there is evidence, that the plaintiff might have obtained a substitute for the goods in time to have fulfilled his sub-contracts, and at a price that would not have reduced his profits. If he could have done so by a reasonable effort, and that course was necessary to his protection, it was his duty to pursue it. Benj. Sales, sec. 877; 1 Sedg. Dam. (8th ed.) secs. 201, 205; 2 do. secs. 740, 741. *Warren* v. *Stoddart*, 105 U. S. 224. Moreover, it is not shown that, at the time the principal contract was entered into, the defendants had notice of the sub-contracts; and without such notice the special damage claimed could not be recovered. 1 Sedg. Dam. secs. 156, 158, 161, 202; 2 do. sec. 740; *St. Louis, etc. Railway* v. *Mudford*, 48 Ark. 509.*

As the general finding of the court is supported by the evidence, and is not contrary to any special finding of facts made in the cause, it is conclusive against the plaintiff's claim to substantial damages; for we think he was not prejudiced by the court's view of the law applicable to this branch of the case. The judgment is

---

*Cf. *Murrell* v. *Pacific Express Co.* 54 Ark. 22; *W. U. Telegraph Co.* v. *Short*, 53 Ark. 434. (Rep.)

therefore without error, in so far as it dismisses his complaint and discharges the attachment at his cost; and to that extent it is affirmed.

**5. When sale held to be rescinded.** But the court erred in declaring that the potatoes were the property of the plaintiff and in giving judgment against him on the counter-claim for the amount of the contract price. The action of the defendants in accepting the offer made by the plaintiff in his letter of February 25 to take the potatoes on the conditions in that letter mentioned, and in delivering the bills of lading for him at the Exchange Bank, was sufficient to vest in him the general property in the goods. But the defendants still had a special property in them growing out of their right to hold them until the price was paid or tendered. *State* v. *Carl*, 43 Ark. 357. And while the goods were thus held for the defendants by the carrier, the plaintiff attached them as the property of the defendants. The latter had, immediately before they were seized, treated them as belonging entirely to themselves by directing their agent to sell them to a third person. By these acts we think the parties concurred in rescinding the defendants' partial performance of the contract; and the effect of this was to divest the plaintiff of any title he had acquired. He attached, then, as he assumed to do, the defendants' goods, and not his own; and, on the discharge of the attachment, the court should have ordered that the proceeds of the sale of the potatoes be paid to the defendants. As the property was theirs, they could maintain no action for the price.

**6. Jurisdiction of magistrate.** But if the facts were otherwise, the amount of the counterclaim placed it beyond the jurisdiction of the justice; and the appeal to the circuit court invested that court with no power to try any issue that might not have been tried by the justice. *St. Louis, etc. Railway* v. *Richter*, 48 Ark. 353; *Texas, etc. Railway* v. *Hall*, 44 Ark. 375; *Amis* v. *Cooper*, 25 Ark. 14; *Whitesides*

v. *Kershaw*, 44 Ark. 377; Const. 1874, art. 7, sec. 40. The judgment against the plaintiff for the price of the potatoes being therefore void, it will be vacated; and the cause will be remanded for further proceedings conforming to this opinion.